No. 12169

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

GEORGE GRANGER, MARJORY BROWN, et al.,

Plaintiffs and Appellants,

-vs-

CASCADE COUNTY SCHOOL DISTRICT NO. 1,

Defendant and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellants:

Robert B. Gillan argued, Great Falls, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
J. Fred Bourdeau, County Attorney, Great Falls,
Montana.
Michael T. Greely, Deputy County Attorney, argued,
Great Falls, Montana.

---

Submitted: April 17, 1972

Decided: JUL 2 0 1972

Filed: JUL 2 0 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Several parents whose children attend elementary and secondary schools operated by defendant school district filed a class action against the district seeking a declaratory judgment and injunction against certain school fees and charges. The district court of Cascade County, the Hon. Paul G. Hatfield, district judge, granted a judgment awarding in part the relief sought by plaintiffs and denying it in part. Plaintiffs appeal from the final judgment.

The facts in the case are undisputed. All are contained in admissions in the pleadings, answers to interrogatories, and exhibits attached to the answers to the interrogatories. Neither oral testimony nor depositions were offered in evidence.

In July 1970, a complaint was filed in the district court seeking (1) a declaratory judgment that certain fees and charges for educational materials furnished by defendant school district to pupils attending the elementary and secondary schools therein were illegal, and (2) a permanent injunction (a) prohibiting collection of such fees and charges, and (b) enjoining the school district from requiring that parents furnish at their own expense items and materials used in school courses. The complaint was filed as a class action by three plaintiffs who had children attending various public elementary schools, junior high schools and high schools in Great Falls, Montana. Defendant was Cascade County School District No. 1, which operates such public schools.

The fees and charges alleged to be illegal were "fees of any nature in respect of any classes offered by schools within said school district and in respect of any facilities or equipment employed in said classes", including fees for the use by pupils of "laboratory, musical, home economics, trade training and commercial equipment" and "fees for the purchase and use of athletic equipment, school supplies and work books". According to the complaint,

- 2 -

the various elementary and secondary schools within the defendant school district intends to impose such fees and charges during the 1970-1971 school year unless restrained by the district court.

On August 27, 1970, because of the imminence of the school year, the district court granted an injunction pendente lite restraining defendant school district from imposing specified fees on children supported by federal, state, or local welfare and public assistance programs or whose parents could otherwise establish economic hardship.

Defendant's answer can be characterized as a general denial.

Forty-eight interrogatories by plaintiffs to defendant school district were filed which the school district answered in a comprehensive document of twenty-seven pages including two exhibits. These answers furnish most of the factual data involved in this action.

The case was submitted to the district court on this basis with briefs. On August 30, 1971, the district court entered its findings of fact, conclusions of law, and judgment set forth in full as follows:

## "FINDINGS OF FACT

"I.

"That during all the times herein pertinent plaintiffs and others similarly situated have been required to pay certain fees and furnish certain materials and supplies.

"II.

"That certain of these fees were required to be paid and certain of these materials were required to be furnished for courses or projects that are required by the defendant School District.

"III.

"That certain of these fees were required to be paid and these materials were required to be furnished for courses and projects which are not required or for activities which are optional or extra curricular.

"IV.

"The items referred to in paragraph II include, but are not restricted to, work books, towel usage fees for mandatory physical education, field trip fees if the field

- 3 -

trip is part of a regular class project, current event magazines.

"V.

"Items referred to in paragraph III. include, but are not limited to, school pictures of all varieties, activity tickets, year books, breakage fees, musical instrument rental, summer school fees, driver education fees, athletic health and accident insurance, assessments for lost or damaged school books.

"VI.

"With regard to general use paper, pencils and notebooks, it is the finding of the Court that their usage varies greatly from individual to individual and that their consumption is not directly related to required courses.

"Upon these findings of fact, the Court now makes the following:

"CONCLUSIONS OF LAW

"I.

"All those items referred to in paragraph II. are necessary as a part of a free, public education.

"II.

"It is not necessary for a free, public education that the defendant furnish the items mentioned in paragraph III. of the Findings of Fact.

"Now the Court being fully advised as to the facts of the matter and the applicable law, and having made its findings of fact and conclusions of law herein.

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that those items mentioned in paragraph II. of the Findings of Fact be furnished by the defendant School Board to all students without charge. All other articles will be the responsibility of the individual students."

Thereafter plaintiffs filed exceptions and proposed additions to these findings which were not granted. Plaintiffs now appeal from the final judgment to the extent it does not grant them full relief.

The single issue presented for review is whether defendant school district can lawfully impose, directly or indirectly, fees or charges of any kind in respect to courses and activities within its control.

Plaintiff's basic position is twofold: (1) that the legislature

- 4 -

has not granted school boards the power to impose such fees and charges and without such statutory power school boards have no authority to do so; (2) the Montana Constitution, Art. XI, Sec. 1 requires the legislature to establish and maintain a "general, uniform and thorough system of public, free, common schools" which precludes a school board from imposing fees or charges of any kind for school courses and activities.

The thrust of defendant school district's contention, on the other hand, is that school boards are granted broad authority by statute which encompasses the power to impose the fees and charges here involved. That constitutionally, a free public education simply means "tuition free" as far as required courses are concerned, and does not prohibit fees and charges for optional, extra curricular, or elective courses and activities. The school district also points out that no pupil is denied attendance or participation by reason of nonpayment of fees, and that waiver of payment is granted in cases of economic hardship. Finally, the school district contends that the fees charged enable it to provide a higher quality education than would otherwise be possible.

Before proceeding to a discussion of the legal principles involved, a more thorough understanding of the fees and charges imposed by the school district is necessary. From kindergarten through grade three fees from $2 to $5.50 per year are imposed for reading materials and workbooks, and charges of 20 to 25 cents are imposed for field trips. In grades four through six fees of $3.25 per year are charged for reading materials and workbooks; fees from 20 to 35 cents are imposed for most field trips with $1.90 in the fifth grade and $6.50 in the sixth grade being charged for conservation field trips; a musical instrument rental fee of 50 cents per month is imposed, and a $5.00 summer music tuition fee is charged.

In grades seven, eight and nine the following fees are imposed: $1.00 per year for a current events paper in Social Studies; $1.00 in English for a

spelling book; $2.00 for materials in Shop; 50 cents per month for rental of musical instruments; and $5.00 for summer music tuition. In grade nine a charge in Shop for the actual costs of materials used supplants the flat $2.00 charge, and a summer school tuition fee of $10.00 is charged.

In grades ten, eleven and twelve the fees and charges vary somewhat depending on which of the two public high schools the pupil attends. In grade ten at Great Falls High School the following fees are imposed: Basic Business workbooks $3.30; Personal Record Keeping workbooks $3.30. At Russell High School the fees are: Physical Education $1.00 towel fee and $3.00 suit fee; Personal Record Keeping workbooks $1.25; French workbooks $1.00. In both high schools there is a musical instrument rental fee of 50 cents per month; a $10.00 fee for driver education; a $5.00 tuition fee for summer music; and a $10.00 tuition fee for summer school.

In grade eleven at Great Falls High School the following fees are imposed: Personal typing workbooks $1.50; Bookkeeping workbooks $5.50; Business Data Processing workbook $3.50. At Russell High School the fees are: Bookkeeping workbooks $4.55; Chemistry notebook $1.25; French workbook $1.00; Sheet Metal & Power Mechanics materials $3.00; Electronics Technician $2.00. In both high schools there is a 50 cents per month charge for musical instrument rental, a $5.00 tuition fee for summer music, and a $10.00 tuition fee for summer school.

At Great Falls High School in grade twelve there is a $3.50 charge for Office Machines workbook and 80 cent charge for an Office Education workbook. At Russell High School the following fees are imposed: Typing workbook $2.00; Office Machines workbook $2.25; Shorthand workbook $1.60; and $2.00 for Drafting or Electronics Technician. In both high schools there is a $3.00 charge for Shop; 50 cents per month for musical instrument rental; $5.00 tuition for summer music; and $10.00 tuition for summer school.

In all grades pupils furnish their own pencils, paper, erasers, notebooks, ballpoint or fountain pens, glue, crayons and similar materials and

supplies.  In Junior High School both boys and girls furnish their own gym clothing and towels, and there is a $1.00 activity fee.  In Senior High School there is a charge of $6.00 for an activity ticket; $7.00 for a Yearbook; and $9.00 in athletic fees for equipment and insurance.

The interrogatories and answers do not disclose which courses are required for graduation and which are optional or elective.  However, it is clear that the pupil has a considerable freedom of choice in the courses he pursues in high school, subject only to a total credit requirement for graduation in addition to certain required individual courses.  All courses in elementary and junior high school carry credit toward graduation, while in senior high school all courses carry credit toward graduation except Driver Education.

The various fees and charges involved in the instant case can be roughly classified in the following categories:  (1) personal school supplies such as pencils, pens, erasers, crayons, glue and similar supplies required to be furnished by the student and his parents; (2) charges for workbooks and materials used in specific courses; (3) charges for athletic equipment and towel usage in mandatory physical education courses; (4) athletic equipment, towel usage and insurance charges for interscholastic athletics; (5) musical instrument rental fees for band and orchestra classes; (6) tuition fees for summer school and summer music; (7) Driver's Education charges; (8) miscellaneous charges for extracurricular activities such as activity tickets, yearbooks, pictures and the like.

Plaintiffs' argument is that the school cannot impose fees or charges for anything, whether required or elective, that is encompassed in the constitutional requirement of a "thorough system of public, free, common schools".  According to plaintiffs, this would encompass all categories referred to in the foregoing paragraph and would prohibit the school district from collecting or attempting to collect any such fees or charges, and from requiring or

- 7 -

attempting to require students or their parents to furnish any supplies, equipment, or materials necessary to take part in any courses or activities within the scope of the authority of the school district. As a corollary proposition, plaintiffs contend that in addition to constitutional prohibitions, there is no statutory authority granted to school districts to impose any such fees or charges.

Defendant School District, on the other hand, contends that the free, public education required by the Montana Constitution means "tuition free" mandatory courses and does not apply to incidental fees and charges for elective or optional courses or extracurricular activities. The school district contends that the Constitution was not intended to prohibit it from furnishing better educational opportunities and training than minimum standards would require which is possible only through imposition of nominal fees for optional, extracurricular, and nonrequired courses and activities. The school district asks us to construe the constitutional requirement accordingly.

At the outset we find it necessary to decide this case on the basis of Montana Constitutional requirements and not upon statutory grounds. The school year involved in the instant case is the 1970-1971 school year. Midway in that school year, the Montana legislature repealed and recodified state school laws effective January 26, 1971. (Ch. 5, 1971 Session Laws) Accordingly, two different and to some extent contradictory sets of statutes apply to different parts of the school year furnishing no definitive answer to the issue the parties have raised herein. Accordingly, we must look to Montana Constitutional requirements.

Article XI, Sec. 1 of the Montana Constitution contains the pertinent constitutional requirement:

> "It shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools."

The meaning of a "thorough system" of public schools has been

interpreted by this Court in McNair v. School District No. 1, 87 Mont. 423, 288 P. 188. In holding that school trustees had the authority to sell bonds for the construction of a gymnasium and outdoor athletic field at Great Falls High School, this Court stated in relevant part:

> "What, then, constitutes a 'thorough' system of education in our public schools? By its voluntary act, the state has assumed the function of education primarily resting upon the parents, and by laws on compulsory education has decreed that the custody of children be yielded to the state during the major portion of their waking hours for five days in the week, and, usually, nine months in the year. In doing so, the state is not actuated by motives of philanthropy or charity, but for the good of the state, and, for what it expends on education, it expects substantial returns in good citizenship. With this fact in mind, it is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship--the good citizen, the man or woman who is of the greatest value to the state, is the one whose every faculty is developed and alert.

> "Education may be particularly directed to either mental, moral or physical powers or faculties, but in its broadest and best sense it embraces them all. (Mount Hermon Boys' School v. Gill, 145 Mass. 139, 13 N.E. 354.) To educate is to 'lead forth, bring up * * * to develop physically,' and education is 'the totality of the qualities acquired through individual instruction and social training, which further happiness, efficiency and capacity for social service of the educated."

And again McNair continues:

> " * * * The common schools are doorways opening into chambers of science, art, and the learned professions, as well as into fields of industrial and commercial activities."

The recent California case, Serrano v. Priest, 96 Cal.Rptr. 601, 487 P.2d 1241, 1248, is persuasive concerning the meaning of a general and uniform system of public, free, common schools as used in Art. XI, Sec. 1, of our Constitution. This case has national significance in the entire area of school financing. It challenged the method of financing schools by local property taxes where legislative classifications discriminate on the basis of wealth. In that case, the court rejected the argument that the constitutional requirement for a "system of (free) common schools" compels uniform education

- 9 -

expenditures. The court said:

> "We have held that the word 'system,' as used in article
> IX, section 5, implies a 'unity of purpose, as well as
> an entirety of operation; and the direction to the
> legislature to provide "a" system of common schools
> means one system, which shall be applicable to all the
> common schools within the state'. (Citing case.) However,
> we have never interpreted the constitutional provision
> to require equal school spending; we have ruled only
> that the educational system must be uniform in terms of
> the prescribed course of study and education progression
> from grade to grade. (Piper v. Big Pine School District.
> (1924) 193 Cal. 664, 669, 673, 226 P. 926)."

See also Rodriguez v. San Antonio Independent School District (W.D.
Texas) 337 Fed.Supp. 280.

This language in Serrano goes to the crux of the problem in the
instant case. Any definition of a "thorough system of public, free, common
schools" must take into consideration the wide diversity of spending through-
out Montana's school districts. Certain course and activity opportunities in
Cascade County School District No. 1 are not available in other Montana dis-
tricts. As long as the individual student is not deprived of equal access to
educational courses and activities reasonably related to recognized academic
and educational goals of the particular school system, the constitutional man-
date is not violated.

Idaho has construed its constitutional requirement of free public
schools to extend to the "necessary elements of any school's activity". Paulson
v. Minidoka County School District No. 331, 93 Idaho 469, 463 P.2d 935. Mich-
igan has construed its constitutional requirement to mean that free schools
means "without cost or charge" and extends to any school activity or function
constituting an "integral fundamental part of the elementary and secondary
education" in the public schools. Bond v. Public Schools of Ann Arbor, 383
Mich. 693, 178 N.W.2d 484.

In conformity with these holdings, the district court has construed
our constitutional provision to mean that mandatory school courses and activi-
ties must be furnished free of charge as part of the constitutional requirement

of a free, public education. Conversely, the district court held that school courses and projects which are optional or activities that are optional or extra curricular are not covered by the constitutional requirement and that fees and charges may be assessed for these. Thus the district court set up what may be termed a "required course or activity" test.

While we consider that the district court was on the right track in its approach, its choice of language in its findings of fact and conclusions of law is not correct. The fundamental difficulty with the district court's language lies in the use of the phrase "courses or projects that are required by the defendant School District" for which fees may not be charged, on the one hand, and "courses and projects which are not required or for activities which are optional or extracurricular" for which fees may be charged on the other hand. Just what is meant by a "required course or activity" as distinguished from an "optional or extracurricular course or activity"?

For example, at the high school level certain specific courses are required for graduation and no difficulty is presented in finding that these fall in the "required course" category. But what about the large number of courses offered, no one of which is specifically required for graduation, but from which the student must amass a given number of credits in order to satisfy the total educational requirement for graduation? Courses falling in this category are required in the sense that a given number must be taken in order to satisfy the total educational requirements for graduation, but they are optional in the sense that the student may elect which specific courses to take in order to satisfy such total education requirements.

We believe that the controlling principle or test should be stated in this manner: Is a given course or activity reasonably related to a recognized academic and educational goal of the particular school system? If it is, it constitutes part of the free, public school system commanded by Art. XI, Sec. 1 of the Montana Constitution and additional fees or charges cannot be levied, directly or indirectly, against the student or his parents. If

- 11 -

it is not, reasonable fees or charges may be imposed.

In this manner a degree of flexibility is insured. The school district may thus define its own academic and educational goals and the courses and activities that will carry credit toward graduation within the limits provided by law. At the same time, the individual student has a freedom of choice, within the limits of the educational framework so established, to pursue a course of study directed toward business, a trade, college preparatory, commercial, secretarial, or some other goal without regard to his financial ability to pay additional fees or charges.

In applying the foregoing principle or test, we wish to make it clear that it applies only to courses and activities offered by the school district during the regular academic year as a part of normal school functions. It has no application to supplementary instruction offered by the school district on a private basis during the summer recess or at special times. The latter are both historically and logically not included in the free public school system required by our Constitution. Accordingly, reasonable fees and charges may be imposed therefor.

Finally the school district argues that its system of waiver of fees and charges for welfare recipients and in other cases of economic hardship satifies the constitutional requirement, and allows it to offer a higher quality of education by offering additional courses and activities beyond the minimum required which would otherwise be financially impossible. We observe that the defense of waiver has nothing to do with the constitutional issue. Constitutional requirements are a matter of right and cannot be satisfied by their denial in the first instance and subsequent waiver of the effects of such denial. The waiver system may well furnish a financial answer, but clearly is not legally justifiable. This may appear to some to be an insignificant matter unworthy of serious discussion, but to a child or his parents financially unable to pay the additional fees and charges imposed by a free,

public school system any waiver procedure is a degrading experience.

While we do not disturb the specific findings of the district court, we do by this opinion modify the language as heretofore set forth. We recognize that the findings are not specific as to each fee discussed in answers to interrogatories, but hold that the specifics are better left to administrative determination under the guidelines set forth. Accordingly, we affirm the judgment as modified herein.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices

- 13 -