(No. 47567.—

WILLIAM C. BECK, Appellant, v. THE BOARD OF EDUCATION OF HARLEM CONSOLIDATED SCHOOL DISTRICT NO. 122, Appellee.

*Opinion filed March 18, 1976.*

Balsley, Roper & Swanson, of Loves Park (William L. Balsley, of counsel), for appellant.

Williams, McCarthy, Kinley, Rudy & Picha, of Rockford (John R. Kinley and Russell D. Anderson, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Board of Education of Harlem Consolidated School District No. 122, appealed from the declaratory judgment and decree of the circuit court of Winnebago County holding that defendant was without authority to collect fees charged for school supplies and materials furnished to the children of plaintiff, William C. Beck, and enjoining the collection of such fees. The appellate court reversed (27 Ill. App. 3d 4), and we allowed plaintiff's petition for leave to appeal.

In his complaint for declaratory judgment and other relief plaintiff alleged that he was the father of four children attending schools conducted by defendant; that defendant had adopted a resolution requiring students to pay certain fees for services and materials; that in 1938 the voters of the district had by referendum adopted the provisions of the free text book act (see Ill. Rev. Stat.

1937, ch. 122, pars. 515 through 520 (now ch. 122, pars. 28—14 through 28—19)), and that the defendant was without authority to charge the pupils the flat rate mandatory fee imposed for workbooks, duplicating paper and masters, magazine subscriptions, dictionaries, paperback books, maps and atlases. Plaintiff also alleged that the imposition of the fees was proscribed by section 1 of article X of the Illinois Constitution, which, *inter alia,* provides that "Education in public schools through the secondary level shall be free."

The case was submitted to the circuit court on a stipulation of facts and several exhibits. The materials and supplies for which the fees were charged are described in the appellate court opinion (27 Ill. App. 3d 4, 6-7), and the description need not be repeated here.

Section 28—15 of the Illinois School Code (Ill. Rev. Stat. 1973, ch. 122, par. 28—15) in pertinent part provided:

> "Sec. 28—15. Textbooks provided and loaned to pupils—Sale to pupils. The governing body of every school district having voted in favor of furnishing free textbooks *** shall provide, at the expense of the district, textbooks for use in the public schools and loan them free to the pupils. Textbooks so furnished shall remain the property of the school district. The governing body shall also provide for the sale of such textbooks at cost to pupils of the schools in the district wishing to purchase them for their own use."

Plaintiff contends that workbooks, duplicating papers, magazine subscriptions, dictionaries, paperback books, maps and atlases were textbooks within the meaning of the statute. He argues that the circuit court correctly held that the printed materials are "useful and beneficial study tools in the educational process" and when "chosen by defendant to be used for that purpose they become textbooks."

Defendant contends that the appellate court correctly held "that in the absence of a contrary statutory definition, a word used in a statute is to have its popularly

understood meaning (*Bowman v. Armour & Co.*, (1959), 17 Ill.2d 43, 52), or commonly accepted dictionary interpretation. (*Husser v. Fouth* (1944), 386 Ill. 188, 194.) Webster's New International Dictionary (2d ed. 1934) defines a textbook as 'a book containing a presentation of the principles of a subject, intended to be studied by the pupil and used as a basis of instruction by the teacher.' The word is popularly understood to describe a *book,* rather than anything of lesser substantiality or permanence, which *expounds* the principles of a field of knowledge, rather than merely presenting exercises or questions, and which is used as the *basis* of a course of study, and not as a general reference work or a reference work on a subsidiary topic.

"A map, we believe is not ordinarily considered to be a textbook, nor is a collection of maps in an atlas, nor is a dictionary, nor is a 'Weekly Reader' magazine, nor is a sheet of paper or a collection of loose sheets of paper. The workbooks containing problems and exercises and the pamphlet on selected subjects are also ordinarily considered, we believe, to be not textbooks but just supplementary materials, or teaching aids; it was stipulated that they were used to supplement books which were the standard work or basis for instruction in the particular area. We cannot find that any of the disputed items are 'textbooks,' the cost of which could not be included in the fee charged to the plaintiff's children." (27 Ill. App. 3d 4, 9.) We agree and would note that when the General Assembly has chosen to give the word "textbook" a meaning other than its commonly accepted one, it has done so. See, *e.g.,* Ill. Rev. Stat. 1973, ch. 122, par. 34–58.

Plaintiff contends that defendant possessed only those powers conferred upon it by statute and that it was without power, express or implied, to collect the fees for the materials and supplies furnished his children. He argues that the only provision in the School Code (Ill. Rev. Stat.

1973, ch. 122, par. 1—1 *et seq.*) specifically empowering a board of education to charge any type of fee to its pupils was section 10—22.25 (ch. 122, par. 10—22.25), which authorized it to purchase textbooks and rent them to pupils, and, he concludes, the proper construction of its provisions would require us to hold that this charge for textbook rental was the only fee authorized by the School Code. He contends further that the circuit court correctly held that because some of the supplies were used "for more than one year and *** by different pupils in varying degrees," because some of the materials were "used by teachers and administrators," although on behalf of each individual student, and because some of the materials and supplies were "retained as school property," the mandatory fees "cannot be differentiated from a tuition charge." We do not agree.

In *Segar v. Board of Education* (1925), 317 Ill. 418, 421, the court said: "A system of schools which permits all persons of school age residing in the district to attend classes and receive instruction in the subjects taught, without a tuition charge, provides free schools, and the fact that the parents of pupils financially able to do so are required to provide their children with text-books, writing materials and other supplies required for the personal use of such pupils does not change the character of the school." In *Hamer v. Board of Education* (1970), 47 Ill.2d 480, we traced the development of the concept of "free schools" in Illinois from statehood in 1818 to 1970 and found that the statement quoted from *Segar* properly reflected the intent of the Constitution and the relevant statutes.

As we observed in *Hamer,* parents of pupils financially able to do so have been required to provide their children with textbooks, writing materials and other supplies prescribed by the school board and required for the personal use of the students. (47 Ill.2d 480, 486-90.) Sections 10—20.5 and 10—20.8 of the School Code (Ill.

Rev. Stat. 1973, ch. 122, pars. 10—20.5 and 10—20.8) respectively authorize the board to adopt and enforce all necessary rules for the management and government of the school, and to direct what branches of study shall be taught and what apparatus shall be used. Under these sections defendant was authorized to require parents financially able to do so to provide their children with educational materials and supplies for use by them or on their behalf. We are of the opinion that defendant was authorized to accomplish the same result by purchasing the necessary materials and supplies, apportioning the cost among the pupils, and charging those parents who were financially able to pay, and we so hold. We also hold that because some of the materials were used by more than one pupil or by a teacher or administrator, or that they might be retained as school property and used for more than one school year did not serve to convert the fee charged into a tuition charge. Tuition is defined as "the price of or payment for instruction" (Webster's Third New International Dictionary (1961)), and, clearly, the fee charged plaintiff's children was not part of the price of, or payment for, instruction.

For the reasons stated the judgment of the appellate court is affirmed.

*Judgment affirmed.*