THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORA THOMPSON *et al.*, Defendants-Appellants.

Third District   No. 77-103

Opinion filed January 9, 1978.—Rehearing denied February 22, 1978.

Aldus S. Mitchell, of Mitchell, Hall, Jones & Black, P. C., of Chicago, for appellants.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Linda M. Vodar, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

This was a joint misdemeanor prosecution of ten persons for criminal trespass to land. (Ill. Rev. Stat. 1975, ch. 38, par. 21—3(a)(b).) After a jury trial in the Peoria County Circuit Court, all 10 defendants were found guilty, and each was sentenced to a six-month term of conditional discharge and ordered to pay a $50 fine.

On April 26, 1976, the Board of Education of School District No. 150 held a public meeting at the Diagnostic Learning Center Administration Building in Peoria. The meeting commenced at 6:30 p.m. and was attended by numerous people, including the 10 defendants in this case who did not attend the meeting as a group. Most of them came to the meeting to speak on a variety of issues of individual concern, and some of them had received prior permission from the Board to do so. However, only one defendant, McFarland Bragg, actually spoke at the meeting. After defendant Bragg had been at the podium for a short time, he was interrupted by Board President Vilberg, who advised the speaker that his time was up. Bragg's microphone was turned off, but he continued to stand at the podium throughout the meeting. A second defendant, Alvin

Richards, was recognized and afforded an opportunity to speak, but refused to do so, stating that the person at the podium (Bragg) had gone unrecognized. None of the other defendants were given an opportunity to speak at the meeting.

The Board meeting ended at approximately 8:45 p.m., but testimony differed as to whether a motion to adjourn was made. Defendants testified they heard no such motion. In any event, the Board members and the majority of the audience left the room at that time. The 10 defendants remained. Defendant John Gwynn allegedly stated that "they would stay until they were heard." Sergeant Mildred Adderholtz, the officer in charge of security for the Board meeting, left the room to converse with District No. 150 Superintendent Harry Whitaker and to telephone the head of security for District No. 150, Chief Robert Beecraft. Adderholtz returned to the room and, acting on Superintendent Whitaker's instructions, asked defendants to leave. She advised defendants that the building would be secured in one hour and anyone remaining would be arrested. Chief Beecraft arrived at the building shortly thereafter and reiterated Sergeant Adderholtz' request and warning. Beecraft was also acting on directions from Superintendent Whitaker. At approximately 10 p.m. officers of the Peoria Police Department arrived on the scene and further advised defendants that if they did not leave immediately, District No. 150 personnel would sign warrants for their arrest. Defendants refused to leave and were arrested. Defendants did not resist arrest, and they engaged in no violent or disruptive conduct throughout the incident. Defendants appeal their convictions.

Defendants' primary contention on appeal is that application of the criminal trespass statute to their conduct in this case deprived them of their rights under the First Amendment to the United States Constitution. Defendants argue that they had a right to attend the school board meeting of April 26, 1976, and further that they had a right to speak at that meeting and a right to hear others who came to speak under the Open Meetings Act (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*), which requires school boards to hold open meetings, and also under the Board's policy of allowing interested persons to speak at Board meetings if they secured prior permission to do so. According to defendants' theory, the Board ended its meeting without a motion to adjourn solely because the Board members did not want to hear the ideas defendants intended to express. Defendants claim this informal adjournment of the meeting denied them their right to speak and to hear others speak. Most importantly, defendants argue that their continued presence in the building after being requested to depart was a protest against the Board's denial of their rights and thus was a constitutionally protected exercise of free speech. Defendants conclude that the State is unconstitutionally punishing them

for exercising their First Amendment rights of free speech and free association.

■■ First Amendment guarantees are not confined to verbal expressions, but also extend to "symbolic speech," nonverbal means of communicating ideas. (*Brown v. Louisiana* (1966), 383 U.S. 131, 15 L. Ed. 2d 637, 86 S. Ct. 719.) Defendants' conduct in this case might well be considered "symbolic speech" as defendants' refusal to leave the building was based upon their desire to communicate their protest against what they believed to be a denial of their rights. Clearly defendants had the right to associate together to protest the school board's action. (*NAACP v. Alabama* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct 1163.) However, the issue in the case is not the right to protest, but the place, time, and manner of protest. The court's have rejected the contention that people who want to propagandize protests or views have a constitutional right to do so whenever and wherever and however they please. (*Cox v. Louisiana* (1965), 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453; *Adderly v. Florida* (1966), 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242.) "[R]easonable 'time, place and manner' regulations may be necessary to further significant governmental interests and are permitted." *Grayned v. City of Rockford* (1972), 408 U.S. 104, 115, 33 L. Ed. 2d 222, 231-32, 92 S. Ct. 2294, 2303.

The court said in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza* (1968), 391 U.S. 308, 320, 20 L. Ed. 2d 603, 88 S. Ct. 1601, 1609:

> "Even where municipal or state property is open to the public generally, the exercise of First Amendment rights may be regulated so as to prevent interference with the use to which the property is ordinarily put by the State."

Although ideas may not be regulated, conduct, even conduct expressly engaged in to convey an idea, may be.

■■■ In the present case defendants are not being punished for the ideas they sought to express but rather for the conduct which they chose as a medium to express those ideas. The criminal trespass statute applies to anyone who "remains upon the land of another after receiving notice from the owner * * * to depart." (Ill. Rev. Stat. 1975, ch. 38, par. 21—3(a).) Defendants in this case refused to leave one of District 150's educational buildings after being requested to do so by personnel acting under instructions from the District Superintendent. School District 150, the owner of the building in question, clearly had a right to ask defendants to leave. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." (*Adderly v. Florida* (1966), 385 U.S. 39, 47, 17 L. Ed. 2d 149, 156, 87 S. Ct. 242, 247.) Moreover, the request that defendants

leave the premises was reasonable since the normal activity of the building in question was educational and it was not a public meeting place. Although defendants certainly had a right to attend the public meeting earlier held in the building, that meeting had been over for more than an hour when defendants were arrested. The Board members and most of the audience had departed by 10 p.m., which was the normal time to close and secure the building. There was no evidence that defendants were singled out for exclusion from the building solely because of their purpose of protest. In essence, School District 150 made a reasonable request that defendants depart the building they were occupying, and defendants are being punished in this case for disobeying that rightful and reasonable request. We find that the provisions of section 21—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 21—3) and the use to which the statute has been put are reasonable and nondiscriminatory. We hold that the provisions here considered do not violate First Amendment guarantees of free speech and assembly.

■■ Defendants cite statutory provisions which require governmental entities such as a school board to hold open meetings (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*) and the Board's policy of allowing interested persons to speak at Board meetings. These points raised by defendants do not affect our decision. Although the legislative provisions cited by defendants do require a school board to open its meetings to the public, they do not require the Board to allow all members of the public to speak at those meetings. Furthermore, whether or not School District 150 violated its own policy is irrelevant since such a violation by the Board could not confer upon defendants the right to trespass on District 150 property. Equally irrelevant to the case is defendants' failure to hear a motion to adjourn the meeting. Motions to adjourn may be customary at such meetings, but they are not required by law. The important facts are that defendants must have known the meeting had ended when the Board members and audience left the room, and that all of the defendants heard the security officer's request that they depart. Similarly the lack of disruption or interference during the incident is also of no consequence since the statute under which defendants were convicted simply does not require any disruption or interference. Remaining upon the land of another after being requested to leave is sufficient to complete the offense. Ill. Rev. Stat. 1975, ch. 38, par. 21—3(a).

Defendants place heavy reliance on *Brown v. Louisiana* (1966), 383 U.S. 131, 15 L. Ed. 2d 637, 86 S. Ct. 719. In that case the United States Supreme Court reversed the convictions of five black defendants who were charged under a disturbing the peace statute for disobeying a request to leave the reading room of a racially segregated public library. The crucial distinction between *Brown* and the case at hand is that the

defendants in *Brown* were "in a place where the protestant has every right to be." (383 U.S. 131, 142, 15 L. Ed. 2d 637, 645, 86 S. Ct. 719, 724.) The defendants in *Brown* were in a public library reading room during regular library hours. The only reason they were requested to leave was their race. That is clearly an unreasonable request under the First and Fourteenth Amendments. In the present case, on the contrary, the request that defendants depart was reasonable because, as discussed above, defendants had no right to be in the school building at 10 p.m., more than an hour after the school board meeting ended. The defendants' presence, whether for the purpose of protest or not, was basically incompatible with the normal activity of that place at that time (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294), and it is not unconstitutional for the State to punish defendants for refusing to leave when receiving a reasonable request to do so.

Next, defendants advance three contentions which relate to the concept of ownership as embodied in the criminal trespass statute. That statute provides that a defendant is guilty of criminal trespass to land if he "remains upon the land of another after receiving notice from the owner * * * to depart." Ill. Rev. Stat. 1975, ch. 38, par. 21—3(a).

■■ ■ Defendants first contend that the complaint in this case insufficiently stated the offense of criminal trespass in failing to allege that the owner of the building in question had given defendants the required notice to depart. Although defendants did successfully challenge two initial complaints, they stipulated prior to trial that School District 150 was the owner of the Diagnostic Learning Center Administrative Building. Having proceeded to trial on the basis of that stipulation, defendants' contention must be judged as though raised for the first time on appeal. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.) The test to be applied is whether the complaint set forth the elements of the offense with sufficient specificity to permit defendants to prepare a proper defense and to permit a conviction or acquittal to be pleaded in bar of future prosecutions. (*People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.) We are convinced that the charge in this case meets this test. The complaint specified that defendants "did knowingly remain *upon the land of* Peoria Public School District 150" and that the security officers were "acting at the direction of said owner" in asking defendants to depart. (Emphasis added.) These allegations were sufficiently specific to inform defendants that School District 150 was the alleged owner of the building and that the security officers were acting at the request of the owner. Thus, the essential elements of the offense were contained in the charge, and the complaint was sufficient.

■■ Defendants also contend that there was insufficient evidence presented to prove that the "owner" of the building in question gave them

notice to depart. Evidence adduced at trial did establish that officers Adderholtz and Beecraft were acting on instructions from Superintendent Whitaker in asking defendants to depart, but defendants deny that Whitaker had authority from the owner, School District 150, to give those instructions. We believe Superintendent Whitaker had such authority.

■■ A district superintendent is an agent of the District School Board, and his authority is delineated by statute. (*Classroom Teachers Association v. Board of Education* (3d Dist. 1973), 15 Ill. App. 3d 224, 304 N.E.2d 516.) Section 10—21.4 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—21.4) provides that school district superintendents "shall have charge of the administration of the schools under the direction of the board of education." This broad grant of administrative authority to the superintendent includes the authority to notify trespassers to depart from school buildings. (See *People v. Spencer* (1st Dist. 1971), 131 Ill. App. 2d 551, 268 N.E.2d 192, where it was held that a high school principal had authority under the criminal trespass statute to give defendant the required notice to depart.)

Finally, defendants contend that the trial court erred in refusing to give the following non-IPI instruction:

"When I say 'owner', I mean a person or organization who has legal or rightful title to the land and buildings."

Defendants claim that the concept of ownership was central to the case and that they were prejudiced by the trial court's refusal to inform the jury of the preceding definition of owner. We disagree.

■■ A non-IPI instruction is required to be simple, brief, impartial, and free from argument. (Ill. Rev. Stat. 1975, ch. 110A, par. 451(a); *People v. Poe* (1971), 48 Ill. 2d 506, 272 N.E.2d 28.) Defendants' instruction does not meet those requirements. The proposed definition of owner includes only a person or organization who has legal title. Such a narrow definition would fail to advise the jury of the myriad of other senses in which the word "owner" may be used. (*Robinson v. Walker* (1st Dist. 1965), 63 Ill. App. 2d 204, 211 N.E.2d 488.) Of particular importance in this case is the instruction's failure to advise that an "owner" may act through an agent. Since the agency relationship between Superintendent Whitaker and the school board was crucial to the State's theory of the case, the instruction cannot be considered impartial or free from argument. The decision whether to give a tendered non-IPI instruction is within the discretion of the trial court. (*People v. Hines* (5th Dist. 1975), 28 Ill. App. 2d 976, 329 N.E.2d 903.) The trial court in this case gave two instructions (IPI Instructions Nos. 9 and 10) which adequately set forth the elements of criminal trespass to land. Hence, we do not believe the trial court erred in refusing to give the instruction tendered by defendants.

■■ In light of the view which we take of this case, the only

remaining issue is the sufficiency of the evidence. We find that the evidence was sufficient in law to show that the defendants refused to leave after being requested to do so by an authorized agent of the school district. This court cannot hold that the defendants were constitutionally free to ignore the numerous warnings to leave and to ignore all the procedures of the statute involved. Respect for judicial process cannot be turned off and on as though it were a hot water faucet. The civilizing hand of law alone can give durable and lasting meaning to constitutional freedom.

For the foregoing reasons, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.