CHRISTOPHER AMBROIGGIO, a Minor, by Diane Ambroiggio, his Mother and Next Friend, *et al.*, Plaintiffs-Appellees, *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 44, DU PAGE COUNTY, Defendant-Appellant.

Second District    No. 80-842

Opinion filed October 20, 1981.

UNVERZAGT, J., dissenting.

Everett Nicholas, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellant.

Barry H. Sherman, of Oakbrook Terrace, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Board of Education of School District No. 44, Du Page County, appeals from a judgment of the circuit court permanently enjoining it from the assessment of a fee against certain of its students who use the supervised lunchroom services provided by the school. We reverse.

Plaintiffs, Christopher Ambroiggio, Anna Elz and Susan Elz, by their parents and next friends, Diane Ambroiggio and Robert Elz, brought this action to enjoin collection of the lunchroom supervisory fee of $15 assessed each term against all children who reside 0.7 of a mile or less from their school and eat their lunches in the school lunchroom. In their complaint plaintiffs alleged the fee was not authorized by the School

Code (Ill. Rev. Stat. 1979, ch. 122, par. 1—1 *et seq.*), and also violated the free education clause of the State Constitution (Ill. Const. 1970, art. X, §1), which provides that "[e]ducation in public schools through the secondary level shall be free." The trial court reasoned that if the supervised lunchroom program, which may be used only by students paying the requisite fee, is for an educational purpose then article 10 of the constitution would bar assessment of the fee. The court also found that if the program was not for educational purposes the fee was unauthorized under the School Code. The trial court concluded defendant may not charge a fee for the use of its facilities, or the supervision of the children using the facilities, and issued the injunction from which defendant appeals.

Evidence was presented that defendant provides space in its school building for students to eat lunches brought by them and during that period they are supervised by noncertified school personnel. No student is required to participate in the lunch program, but those who do so are placed in two categories. If a child resides more than 0.7 of a mile from school or is provided bus transportation to school he may participate in the program without charge. Those children, including plaintiffs, who reside 0.7 of a mile or less from school and are not transported by a school bus, however, are assessed the $15 fee if they wish to eat their lunches in the school facilities. The parties agree that defendant has the authority under the School Code to provide a lunchroom supervision program but differ on the question of whether fees may be charged.

The general powers and duties of a school board are set forth in sections 10—20 and 10—22 of the School Code. It is well established that a broad spectrum of implied and incidental powers may be inferred from these express statutory grants. (*Beck v. Board of Education* (1975), 27 Ill. App. 3d 4, 8, 325 N.E.2d 640, 643, *aff'd* (1976), 63 Ill. 2d 10, 344 N.E.2d 440; see also *Wilson v. Board of Education* (1908), 233 Ill. 464, 84 N.E. 697; *Byerly v. Board of Education* (1978), 65 Ill. App. 3d 400, 382 N.E.2d 694.) Section 10—20.5 of the School Code permits a board to adopt and enforce all necessary rules for the management of its schools, and section 10—22.26 permits a school district to maintain and finance a school lunch program. Section 10—22.34 provides that "[s]chool boards may employ non-teaching personnel * * * for non-teaching duties not requiring instructional judgment or evaluation of pupils" and they may "designate non-certificated persons * * * to serve as supervisors, chaperones or sponsors, either on a voluntary or on a compensatory basis for school activities not connected with the academic program of the schools." Ill. Rev. Stat. 1979, ch. 122, par. 10—22.34a.

As defendant has the express power to operate a lunch program and to employ personnel to supervise it, we conclude it has an implied author-

ity to impose a fee to help offset the costs of the program. See *Beck v. Board of Education* (1976), 63 Ill. 2d 10, 15, 344 N.E.2d 440, 442.

We next consider whether the lunchroom supervision fee imposed by defendant violates the "free education" clause of the Illinois Constitution. (Ill. Const. 1970, art. X, §1.) The parties agree the issue as formed by the facts of this case has not been directly considered by the reviewing courts of this State or other jurisdictions. (See Annot., 41 A.L.R.3d 752 (1972).) In Illinois, similar litigation has centered on unsuccessful challenges of fees imposed by school boards for textbooks, towels, locker rental and school supplies. See *Beck v. Board of Education* (1976), 63 Ill. 2d 10, 344 N.E.2d 440.

In *Hamer v. Board of Education* (1973), 9 Ill. App. 3d 663, 292 N.E.2d 569, this court referred to the record of the Constitutional Convention:

> "In discussing the proposed new constitutional article pertaining to 'free schools' we find the Educational Committee member stated at page 765:
>
>> '* * * The first part states that education in the public schools through the secondary level shall be free. This sentence picks up the 1870 Constitutional requirement of free schools. * * * However, *we recognize that schools are not totally free; through tradition and practice, this has been interpreted to mean tuition-free and not totally free public education, and this is the intent of this third paragraph.'*
>
> In response to a query as to what the word 'free' included, the following colloquy took place, as set forth at page 767:
>
>> '* * * *Is it your intention that the word "free" includes anything other than tuition for the elementary and secondary schools?*
>
> Mr. FOGAL: You may recall earlier in our committee deliberations we voted tentatively to strike 'free', since most of us recognize that we don't have—and as far as I know we never have had—totally free public schools; and we considered that earlier position. *We felt that tradition will continue, probably, to interpret 'free public education' as we always have,* and it's open to either provide totally free education, whether you are speaking of book fees, book rentals, or PE equipment, or we can continue as we are now, *I don't think we have changed it.*' " (Emphasis added.) (9 Ill. App. 3d 663, 666, 292 N.E.2d 569, 571-72.)

The reasoning of the Illinois cases as well as those from other jurisdictions distinguish educational services, which must be provided to students tuition-free, from noneducational services and school supplies for which reasonable charges may properly be assessed. See, *e.g., Sneed v. Greens-*

*boro City Board of Education* (1980), 299 N.C. 609, 611 n.1, 264 S.E.2d 106, 109 n.1, and cases cited therein; see also *Granger v. Cascade County School District No. 1* (1972), 159 Mont. 516, 499 P.2d 780.

Plaintiffs contend the lunch program is a part of the educational process carried out by the school as it provides an opportunity for children to socialize, mature emotionally and engage in interpersonal relationships. We are not persuaded, however, that providing a secure place to eat lunch without interference from others can be so considered. The program in issue is not mandatory, although all the children have a lunch period, and it is supervised by nonteaching personnel. It would require strained reasoning to liken defendant's lunchroom supervisory fee to a tuition fee which might be improperly charged for required educational courses or programs. Compare *Norton v. Board of Education* (1976), 89 N.M. 470, 553 P.2d 1277 (fee may be imposed for elective school courses, but not for required academic program).

Plaintiffs' reliance on *Elliot v. Board of Education* (1978), 64 Ill. App. 3d 229, 380 N.E.2d 1137, is misplaced. There, the school board was required to pay the cost of a handicapped student's education in a private school when he was excluded from public school by his handicap. *Elliot* must be distinguished as it was directed to payment of tuition for educational purposes, not to an incidental, noneducational program as in the present case.

■■ We conclude that defendant had the implied power to impose the fee in question and in doing so did not violate the constitutional guarantee of a free education.

Plaintiffs also argue that if defendant was authorized to assess the fee in issue the classification scheme under which it is applied only against children living within 0.7 of a mile from school violates the equal-protection clause of the fourteenth amendment. Defendant points out, however, that this constitutional issue was not pleaded in plaintiffs' complaint nor was evidence relating to it offered by either party in the trial court.

■■ It is a basic principle that the issues in a case are framed by the pleadings and a party may not prevail where the proof does not follow the allegations made therein. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 518, 377 N.E.2d 21, 24; *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 467, 300 N.E.2d 616, 625.) "[T]o have evidence without pleading an issue is as fatal as pleading an issue and not supporting it with evidence." (*In re Walton* (1979), 79 Ill. App. 3d 485, 487-88, 398 N.E.2d 409, 411; see also *Burke v. Burke* (1957), 12 Ill. 2d 483, 147 N.E.2d 373.) From our examination of the pleadings and the record of the evidentiary hearing, it is apparent that plaintiffs' equal-

protection argument suffers from both infirmities in that it was neither proved nor pleaded, and we will not consider it further.

Accordingly, the judgment of the circuit court of Du Page County is reversed.

Reversed.

SEIDENFELD, P. J., concurs.

Mr. JUSTICE UNVERZAGT, dissenting:

I respectfully dissent from the opinion of the majority. The majority's assertion that providing a secure place to eat lunch without interference from others cannot be considered an educational process is but an *ipse dixit*.

Leonard Roberts, superintendent of schools at School District No. 44, testified that two-thirds of the student body goes home for lunch and one-third of the student body remains in the schools; that students who stay at school for their lunch are supervised by persons employed by the school district for that purpose. They are lay people, nonteachers or non-certified people, in most instances. These persons watch the lunchroom while the students are eating, and then watch the playground or some other recreational area between the time the children are finished eating lunch and the time that class is taken up again after lunch. The duties of the lunch-time supervisors are to make sure that the youngsters are able to eat in an atmosphere where they aren't harassed and where the children can eat and have a reasonably wholesome type of lunchroom period. The supervisors discipline the children when necessary. When the children are on the playground the supervisors make sure that the youngsters play in an organized way; they make certain no one is injured and resolve any minor student disputes that arise in the process of playing the games. Mr. Roberts characterized this as a baby-sitting service for the youngsters who stay for lunch.

Harold C. Wright, regional superintendent of schools of Du Page County, testified that the District No. 44 lunchroom program provides for the further social maturation of students. It helps them to learn to get along with their peers; that is one of the results school administrators hope to accomplish.

It seems to me that supervision of children during the school day, and creating an atmosphere where they are not harassed and where they have a reasonably wholesome atmosphere, and providing for discipline and play in an organized way, and making sure the children are not injured and minor student disputes are resolved, all in a manner which provides for further social maturation, are "instructional" matters, well within the

educational services and goals of the public school.

The Constitution of this State provides:

"\* \* \* Education in public schools through the secondary level shall be free. \* \* \*." Ill. Const. 1970, art. X, §1.

In explaining this provision, the Education Committee of the Sixth Illinois Constitutional Convention submitted its proposal which was adopted by the committee as a whole. That proposal included the following:

"The third paragraph contains two parts: ·

(1) It requires that public schools through the secondary level shall be free. The Committee considers it necessary that the Constitution state, in explicit terms, the obligation of the State to provide free public schools for what has traditionally been considered common school education. \* \* \*.

\* \* \* It would, however, require that whatever educational programs are established as part of the public school system through the secondary level be free of tuition charges for resident pupils." 6 Record of Proceedings, Sixth Illinois Constitutional Convention 235.

Tuition is defined as "the price of or payment for instruction." (Webster's Third New International Dictionary 2461 (1966).) It seems to me that the fee charges here in issue can be considered "the price of or payment for instruction"; instruction in the art of civilized living during the noon hour. As such, these fees are prohibited by the constitutional mandate of "free" schools.

I agree with the trial judge that a school district undertaking to provide school lunch services may not charge for the use of the facilities or the supervision of the children making use of those facilities.

I would affirm the court below.