TAMARA J. NUDING, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF CERRO GORDO COMMUNITY UNIT SCHOOL DISTRICT No. 100 *et al.*, Defendants-Appellees.

Fourth District    No. 4—99—0916

Argued April 26, 2000.—Opinion filed May 15, 2000.—
Rehearing denied June 16, 2000.

Joseph W. Vigneri (argued), of Joseph W. Vigneri, Ltd., of Decatur, for appellant.

Howard W. Small (argued), of Law Office of Ansel & Small, Ltd., of Champaign, for appellees.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In September 1999, the Board of Education of Cerro Gordo Community Unit School District No. 100 (Board) banned plaintiff, Tamara J. Nuding, from attending all school events and extracurricular activities from September 9, 1999, through September 9, 2000, based on plaintiff's behavior—removing a toy gun from her blouse and a pocketknife from her pocket—at a previous school board meeting. Plaintiff filed a 13-count complaint against defendants, the Board and the Board members individually, seeking in part a preliminary injunction restricting the school board from enforcing its ruling. In October

1999, the trial court denied plaintiff's request for a preliminary injunction. Plaintiff appeals, arguing that (1) the Board violated her first and fourteenth amendment rights under the United States Constitution (U.S. Const., amends. I, XIV), (2) the Board's policy allowing it to ban plaintiff from school activities exceeded its statutory authority, and (3) the trial court erred in denying her preliminary injunction. We affirm.

## I. BACKGROUND

In August 1999, several individuals, including plaintiff, took a tour of the district's high school. Plaintiff wore a pair of shorts and a blouse. Plaintiff concealed a black toy gun in her blouse, a pocketknife in her shorts' pocket, and a plastic squirt gun in her purse. The black toy gun did not have any identifiable characteristics to indicate it was not a real gun. After the tour, the Board conducted a regularly scheduled meeting in a classroom of the high school.

(Plaintiff moved to supplement the record in this court with plaintiff's exhibit No. 2 at trial (the black toy gun) and defendant moved to supplement the record in this court with plaintiff's exhibit No. 1 (the plastic squirt gun). These motions were allowed. The black toy gun is 8 inches long, 5 inches high, and $1^1/8$ inches thick, a carved wood object, painted black with silver paint denoting the muzzle and screws, hollowed out at the muzzle end, weighing approximately 9.6 ounces. The plastic squirt gun is approximately $9^1/2$ inches long, $6^3/4$ inches high, and $1^3/8$ inches thick, royal blue with neon-yellow-and-orange-patterned handle grips, a neon yellow trigger, with neon orange patterns painted on the barrel and a neon orange barrel tip, weighing approximately 6.6 ounces.)

During the Board meeting, a participant voiced opposition to the Board's recently adopted dress code for students aimed at school safety. Plaintiff then addressed the Board by standing up and asking if what she wore was appropriate under the dress code. After receiving acknowledgment that what she wore was appropriate, she reached into her blouse, removed the black and silver wooden toy gun, and placed it on a table. Plaintiff also retrieved a two-to-three-inch pocket knife from her pocket and placed it on the table next to the gun. Statements plaintiff made during the "demonstration" are controverted, as is the manner in which she placed the objects on the table. Following the demonstration, the Board temporarily recessed so members could attend a sports banquet. Later, the meeting resumed without incident.

The following week, Leonard Bogle, the school district superintendent, filed a written complaint concerning plaintiff's conduct at the

Board meeting. The complaint alleged that plaintiff violated Board policy 830.02, which states in part:

"While in attendance at school-sponsored or related activities, functions and meetings, extracurricular activities[,] and athletic events *** no person shall:

\* \* \*

4. Do any act which is intended to disrupt the performance or continuance of any school-sponsored or related activities, functions and meetings, extracurricular activities[,] and athletic events.

5. Do any act which is intended to impede or disrupt the proper observance of or participation in any school-sponsored or related activities, functions and meetings, extracurricular activities[,] and athletic events."

In September 1999, the Board acted upon Bogle's complaint and banned plaintiff from attending all school events and extracurricular activities for the remainder of the 1999-2000 school year. Later that month, plaintiff filed a 13-count complaint against defendants, count I of which sought a preliminary injunction against enforcement of the ban.

In October 1999, the trial court conducted a hearing on count I of plaintiff's complaint. Plaintiff testified that her two children attend school within the district and she regularly attended Board meetings. At this Board meeting, she told the Board that she was going to demonstrate against the school dress code. She stood up, twice asked if she was dressed appropriately, and turned once to show what she wore. After an acknowledgment that she was dressed appropriately, she reached into her blouse and took out the black toy gun. As she did so, she stated, "If this would have been real, I could have shot any of [you] within the past hour." She placed the black toy gun on the table, retrieved a pocketknife from her pocket, and placed the knife next to the gun on the table. She did not display the squirt gun in her purse, and denied she fanned the black toy gun across the room and that she "slammed" the gun and knife on the table. Plaintiff explained that she made the demonstration to show the Board that the students' clothing was not the issue. She believed that the demonstration was necessary because she previously heard that the "Board does not listen to [her]."

Cindy Lowe, a longtime friend of plaintiff, testified that plaintiff stated, "This is [a] toy," as she reached into her blouse and retrieved the black toy gun. After placing the black toy gun and pocketknife on the table, the high school principal asked, "What is that? What did she say?" Plaintiff answered, "This is [a] toy." After the demonstration, the only student attending the meeting stated, "That was cool." Lowe denied that plaintiff slammed the gun and pocketknife on the table.

Leonard Bogle testified that plaintiff did not forewarn the Board that she would make a demonstration against the school dress code. After retrieving the black toy gun, plaintiff panned the room with the gun and stated, "I could have shot any of you since six o'clock." She did not state that the gun was a toy until she laid it on the table. Bogle stated that he believed the gun was real, and he was "stunned" by plaintiff's actions.

Carol Jean Kussart testified that she observed plaintiff retrieve the gun from her blouse and make a sweeping motion across the room. Plaintiff stated, "I could have shot at every one of you here" and did not identify the gun as a toy until asked what it was by the principal. The gun and knife made a "thump" when plaintiff threw them on the table. Kussart believed the gun was real and described her reaction as "terrified *** extremely frightened."

Earl William Johnson testified that plaintiff waved the gun through the air and that he believed the gun was real. He felt apprehension when he saw the gun, and the woman next to him grabbed his arm when the plaintiff waved the gun in the air.

Vicki Mercer testified that she was near the plaintiff during the Board meeting. Plaintiff retrieved the gun from her blouse, held it above her head with both hands, and stated, "I could have shot any of you since six." Plaintiff slammed the gun on the table, took out a pocketknife from her pants, and slammed it on the table. Plaintiff did not indicate that the gun was a toy until questioned by the principal. She described her reaction as "scared stiff," "frozen," and "petrified."

The trial court denied the temporary injunction and dismissed count I. The trial court found that the Board did not go beyond its statutory authority to adopt and enforce rules for the management and safety of the public school in its district and that, while plaintiff had first and fourteenth amendment rights, those rights were not without some type of standard. This appeal followed.

## II. ANALYSIS

### A. Plaintiff's Constitutional Rights

Plaintiff argues that the Board's action of banning her from school property and events is a violation of her first and fourteenth amendment rights under the United States Constitution. Plaintiff contends that her "demonstration" was merely an expression of her first amendment right to free speech.

■ The first amendment of the United States Constitution, made applicable to the states through the fourteenth amendment, prohibits the government from denying or abridging freedom of speech. U.S. Const., amends. I, XIV. Protected speech includes not only written and

spoken words but also can include expressive conduct. *Spence v. Washington*, 418 U.S. 405, 409-10, 41 L. Ed. 2d 842, 846-47, 94 S. Ct. 2727, 2729-30 (1974). The first amendment protects nonverbal conduct if the actor intends the conduct to convey a particularized message and the message will likely be understood by those who view it. *Spence*, 418 U.S. at 410-11, 41 L. Ed. 2d at 846-47, 94 S. Ct. at 2730.

A state may impose reasonable restrictions on the time, place, and manner of constitutionally protected speech occurring in a public forum. The time, place, and manner restriction must (1) be content neutral, (2) be narrowly tailored to serve a significant government interest, and (3) leave open alternative channels of communicating the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 105 L. Ed. 2d 661, 675, 109 S. Ct. 2746, 2753 (1989).

■ A regulation is "content neutral" if it is " 'justified without reference to the content of the regulated speech.' " *Ward*, 491 U.S. at 791, 105 L. Ed. 2d at 675, 109 S. Ct. at 2754 (emphasis omitted), quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 82 L. Ed. 2d 221, 227, 104 S. Ct. 3065, 3069 (1984). In other words, content-neutral regulations confer benefits or impose burdens without reference to the ideas or views expressed. *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 643, 129 L. Ed. 2d 497, 518, 114 S. Ct. 2445, 2459 (1994). For example, an ordinance prohibiting the posting of signs on public property was held to be content neutral because it applied to all signs regardless of the speaker's point of view. *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804, 80 L. Ed. 2d 772, 786-87, 104 S. Ct. 2118, 2128 (1984).

■ The Board's policy under which plaintiff was banned from school functions addresses the conduct of the public while on school property. The policy applies to any person who attends a school-sponsored function, meeting, extracurricular activity, or athletic event on school property regardless of the person's ideas or views. Thus, the policy satisfies the requirement that time, place, or manner regulations be content neutral.

The Board's policy is also narrowly tailored to serve a significant government interest. The Board's policy restricts conduct on school grounds that (1) disrupts the performance or continuance of school-related activities or (2) impedes or disrupts the participation of others in school-related activities. Schools may restrict expressive activity if such activity "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 513, 21 L. Ed. 2d 731, 741, 89 S. Ct. 733, 740 (1969); see also *People v. Thompson*, 56 Ill.

App. 3d 557, 562, 372 N.E.2d 117, 120 (1978) (application of criminal trespass statute against individuals who refused to leave a school board meeting not a violation of first amendment right of free speech).

The Board's policy also leaves open alternative channels of communication. The policy does not ban any particular type or manner of expression at any given time or place. The policy allows people to express their views regardless of their content. The only restriction on the expression of views is that they not disrupt or impede the school activity taking place. Such a restriction allows adequate channels of communication. See *Ward*, 491 U.S. at 802, 105 L. Ed. 2d at 682-83, 109 S. Ct. at 2760. Accordingly, the Board's policy did not violate plaintiff's first or fourteenth amendment rights.

### B. Statutory Authority of the Board's Policy

Next, plaintiff argues that the Board's policy is invalid because it exceeds its statutory authority. Plaintiff contends that the Board promulgated its policy under section 24—24 of the School Code (105 ILCS 5/24—24 (West 1998)), and that section allows the Board to enforce rules only for athletic and extracurricular activities and not Board meetings.

Section 24 of the School Code allows a school board to "make and enforce reasonable rules of conduct and sportsmanship for athletic and extracurricular school events." 105 ILCS 5/24—24 (West 1998). Plaintiff contends that the Board's policy exceeds the authority granted to it by section 24—24 because it includes conduct at meetings such as a Board meeting, which is neither an athletic nor extracurricular school event. Plaintiff asks this court to determine if a school Board meeting is an extracurricular school event. We need not decide if a Board meeting constitutes an extracurricular school event because the Board was granted authority to promulgate rules for its meetings through section 10—20.5 of the School Code (105 ILCS 5/10—20.5 (West 1998)).

Section 10—20.5 authorizes a school board to "adopt and enforce all necessary rules for the management and government of the public schools of [its] district." 105 ILCS 5/10—20.5 (West 1998). This express grant of authority confers a broad spectrum of implied and incidental powers. See, *e.g.*, *Beck v. Board of Education of Harlem Consolidated School District No. 122*, 63 Ill. 2d 10, 15-16, 344 N.E.2d 440, 442 (1976) (school board authorized to require parents financially able to provide their children with educational materials and supplies to do so); *Ambroiggio v. Board of Education of School District No. 44, Du Page County*, 101 Ill. App. 3d 187, 188-89, 427 N.E.2d 1027, 1029 (1981) (school board authorized to impose a fee to offset costs of lunch

program); *Thomas v. Board of Education of Community Unit School District No. 1*, 117 Ill. App. 3d 374, 376, 453 N.E.2d 150, 152 (1983) (school board authorized to require teacher to provide typed copies of his examinations). The Board must conduct meetings. 105 ILCS 5/10—6 (West 1998). We conclude that it also has the implied authority under section 10—20.5 to promulgate rules for the conduct of participants at those meetings.

### C. Denial of Plaintiff's Preliminary Injunction

Last, plaintiff argues that the trial court's denial of her preliminary injunction was an abuse of discretion.

To obtain a preliminary injunction, an applicant must show, by a preponderance of the evidence, that (1) she possesses a clearly ascertained right in need of protection; (2) she will suffer irreparable harm without the injunction; (3) no adequate remedy at law exists; and (4) she is likely to be successful on the merits of her cause. The applicant need not prove a case that will entitle her to the ultimate relief she seeks; rather, she need only raise a fair question as to the existence of the right claimed, making it advisable that the parties retain the status quo until the court can consider the case on its merits. *Cameron v. Bartels*, 214 Ill. App. 3d 69, 73, 573 N.E.2d 273, 275 (1991).

The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court and will not be disturbed absent a showing of abuse. This court's review is limited to determining whether the trial court's findings are against the manifest weight of the evidence. *Cameron*, 214 Ill. App. 3d at 74, 573 N.E.2d at 276.

In this case, the trial court denied plaintiff's preliminary injunction, finding that plaintiff's constitutional rights were not violated and the Board was authorized to ban her from school events. Thus, the trial court found that plaintiff was not likely to succeed on the merits of her cause. As discussed, we cannot say that the trial court's decision was against the manifest weight of the evidence.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN and KNECHT, JJ., concur.