## WORTH *v.* BOARD OF PUBLIC EDUCATION FOR THE CITY OF SAVANNAH AND COUNTY OF CHATHAM.

No. 9241. JUNE 14, 1933.

*Oliver & Oliver,* for plaintiff.

*Lawton & Cunningham,* for defendant.

HILL, J.   On February 23, 1917, Congress passed what is commonly known as the Smith-Hughes act (39 Stat., 929), and is contained in U. S. Code  Ann. Title 20, chapter 2.  Under this act Congress appropriated three million dollars annually "for the purpose

of co-operating with the States in paying the salaries of teachers of trade, home economics, and industrial subjects." That sum is allotted to the States "in the proportion which their urban population bears to the total urban population in the United States." U. S. C. A. § 13. In order to derive the benefit of this appropriation the State must, "through the legislative authority thereof, accept the provisions of this act and designate or create a State board" to co-operate with the Federal board. § 16. A Federal board for vocational education is created to administer the act. § 17. The State board is required to prepare the plan showing the kinds of vocational education for which it is proposed the appropriation shall be used, the courses of study, etc.; and if the Federal board finds the plan and courses of study in conformity to the provisions of the act, then the same are approved by the Federal board. § 18. The appropriation under the Federal act is devoted exclusively to the salaries of teachers and supervisors, and the cost of instruction supplementary thereto "shall be borne by the State and local communities, and no part of the cost thereof shall be borne out of the appropriation" therein made, and for each dollar of the Federal money so appropriated and expended there shall be a similar sum expended by the State or local community. § 19. Other provisions of the act, with reference to agricultural subjects, etc., have no bearing on the instant case.

The opportunity school, so-called, is conducted by the board of education under the provisions of the Smith-Hughes act, and the defendants' answer fully explains the general characteristics of the opportunity school. There is also evidence of A. F. Canon, the State supervisor of industrial and vocational education of the Georgia State board, and of Perry A. Babcock, the director of vocational education for the County of Chatham, to the same effect. The subjects which are taught in the opportunity school are set forth in the defendants' answer, from which it appears that among the subjects taught are stenography and typewriting; but the larger part of the work in this opportunity school is general vocational work, that is, teaching English, spelling, writing, and arithmetic. Section 21 of the U. S. Code provides: "In order to receive the benefits of the appropriation for the salaries of teachers of trade, home economics, and industrial subjects, the State board of any State shall provide, in its plan for trade, home economics, and in-

dustrial education, that such education shall be given in schools or classes under public supervision or control; that the controlling purpose of such education shall be to fit for useful employment; that such education shall be of less than college grade, and shall be designed to meet the needs of persons over fourteen years of age who are preparing for a trade or industrial pursuit, or who have entered upon the work of a trade or industrial pursuit." This section further provides: "That at least one third of the sum appropriated to any State for the salaries of teachers of trade, home economics, and industrial subjects shall, if expended, be applied to part-time schools or schools for workers over fourteen years of age who have entered upon employment, and such subjects in the part-time school or classes may mean any subject given to enlarge the civic or vocational intelligence of such workers over fourteen and less than eighteen years of age." It appears that the Federal Board for vocational education construes what the act means to subjects taught; that "the subjects taught must be such as are designed to increase the civic and vocational intelligence of the pupil;" and "part-time schools or classes may be operated for persons over fourteen of age, without upper-age limit, provided that the instruction given is designed for and suitable to enlarge the civic or vocational intelligence of workers over fourteen and less than eighteen years of age."

The State of Georgia accepted the provisions of the Federal vocational act by the passage of the act of August 19, 1919, which is contained in the code of school laws, § 178; Michie's Code, § 1551(198) et seq.; 8 Park's Code Supp. 1922, § 1445(a). According to the evidence in the record, in substantially all opportunity schools it is the practice to teach stenography and typewriting. Under the Federal act such subjects may be taught as will "enlarge the civic or vocational intelligence" of the pupil, and it would seem that stenography and typewriting fall within this broad classification. It appears also that stenography and typewriting are prescribed by the State board as subjects to be taught in the opportunity schools, and that they are approved by the Federal board. The act of the legislature of the State of Georgia (Ga. Laws 1922, p. 82), provides (sec. 1): "Power is hereby delegated to and conferred upon the several counties of this State to levy and collect taxes for educational purposes in such amounts as the county au-

thorities shall determine, the same to be appropriated to the use of the county board of education, and the educational work directed by them." By section 2 the boards of education of the several counties of the State are authorized to employ and pay county agents and home demonstration agents. Under the constitution of the State, taxes can be levied for "educational purposes;" and this court has construed the words "educational purposes" and given to those words the broadest significance. *Bowers* v. *Hanks,* 152 *Ga.* 659, 662 (111 S. E. 38); *Hanks* v. *D'Arcy,* 156 *Ga.* 55, 58 (118 S. E. 656). In *Smith* v. *Tolbert,* 160 *Ga.* 268, 271 (127 S. E. 868), it was said: "Now the legislature can provide for the teaching of any branches of education in the public schools of this State; and these schools can be maintained by taxation within the limits and upon the conditions prescribed in the constitution as now amended. The board of education of any county has the right to establish one or more high schools, or junior high schools, if in its opinion they may be necessary and possible through local taxation." From the evidence it appears that stenography and typewriting are taught in the senior high schools. The Federal vocational act provides (U. S. C. A. § 21): "Such schools or classes giving instruction to persons who have not entered upon employment shall require that at least one-half of the time of such instruction be given to practical work on a useful and productive basis, such instruction to extend over not less than nine months per year, and not less than thirty hours per week." It appears from the language just quoted that the provision applies only to "persons who have not entered upon employment." The board of education authorizes the teaching of pupils in the opportunity school without any upper-age limit. The only age limit is that the pupil shall be over fourteen years of age. The Federal act (U. S. C. A. § 21) provides: "Such education shall be of less than college grade and especially designed to meet the needs of persons over fourteen years of age who are preparing for a trade or industrial pursuit, or who have entered upon the work of a trade or industrial pursuit." No upper-age limit is declared in this section of the act. In reference to the subjects to be taught, the act declares that "such subjects in a part-time school or class may mean any subject given to enlarge the civic or vocational intelligence of such workers over fourteen and less than eighteen years of age." Our school code, § 110,

Michie's Code, § 1551(18) ; 8 Park's Code Supp. 1922, § 1437(jj), provides that "admission to all common schools shall be gratuitous to all children between the ages of six and eighteen." This is not a limitation as to the ages of children who may be taught in the public schools. It is merely a statement that all children between the ages of six and eighteen years shall be taught free. The legislature may provide for the teaching of persons of any age, and it has provided for the teaching of adult illiterates in the elementary branches of an English education only—Michie's Code, § 1562(13) ; 8 Park's Code Supp. 1922, § 1565(6). There is nothing in the constitution of the State which limits the age of pupils.

The legislature in 1866 incorporated the board of public education for the City of Savannah and the County of Chatham. Ga. L. 1866, p. 175. That act provides: "No general law upon the subject of public education now in force, or hereafter to be enacted, shall be held, deemed, or construed to interfere with, diminish, or supersede the rights, powers, and authority conferred upon the said board, . . unless it shall be so expressly enacted." Neither the Federal vocational act and the State's acceptance thereof nor the act giving power to teach evening schools "interferes with, diminishes, or supersedes the rights, powers, and authority" conferred on this board of education. The acts mentioned merely amplify the powers of the board. The purpose of the legislature in framing and passing this provision of the school charter for the City of Savannah and County of Chatham was that the powers and authority of the board of education should not be curtailed or diminished merely by implication. Neither is there in section 106 of the school code, which relates to evening schools and which provides that "The board of education of any county or municipality shall have power to establish" evening schools, anything that curtails or diminishes the power or authority of the board of Savannah and Chatham County, and the reference to the board of education in any county or municipality as used in the school code is broad enough to include the board of Savannah and Chatham County. The authority of the defendant to conduct a night school is derived from section 106 of the school code (Ga. L. 1919, p. 330). Michie's Code, § 1551(113) ; 8 Park's Code Supp. 1922, § 1437(ff). This section provides: "The board of education of any county, or municipality shall have power to establish, at such

places as they may deem proper and suitable, a number of evening or part-time schools for the instruction of youths over fourteen years of age who are prevented by their daily vocations from attending the all-day schools, subject to such regulations as may be provided by the State board for vocational education." As to the night school, it is not connected with the Federal vocational system, but is under the jurisdiction of the local board of education, subject to such regulation as may be provided by the State board, and there is no limitation as to the educational subjects which may be taught. In this school pupils between the ages of fourteen and twenty-one are taught.

Our attention is called to section 162 of the school code, which provides that "none of the provisions of this article shall apply to local county school systems which were in existence at the time of the adoption of the constitution of 1877. Nor shall any of the provisions of this article apply to the school system of any municipality having a population of 100,000 people or more." It will be observed that the above-quoted section of the school code does not provide that none of the provisions of the school code shall be applicable to local county systems, etc., it merely states that "none of the provisions of this *article* [emphasis ours] shall apply." It appears that the *article* is one relating to "county superintendents of schools" (page 349 of the school code). The provisions of the act with reference to county superintendents have no relevancy or applicability to local county systems established by special law. It appears, therefore, that the Federal vocational act, and its acceptance by the State of Georgia, and section 106 of the school code relating to night schools, do not interfere with or supersede the rights and powers conferred on the board of education of Savannah and Chatham County. The act amplifies and broadens these powers, but does not supersede them; and we see no reason why the opportunity and night schools can not be taught in the City of Savannah and Chatham County, as they are taught in other counties of the State, including the subjects about which complaint is made.

The plaintiff insists that an injunction should be granted against teaching students who are not bona fide residents of the City of Savannah or the County of Chatham. This contention, under the evidence, is without merit. The evidence tends to show that the

board of education does not knowingly admit any students to any of its schools who are not bona fide residents of the City of Savannah and Chatham County. It is true there was some evidence on behalf of the plaintiff which tended to show that there might have been as many as five or six such students in the schools, but there is nothing in the record tending to show that the school authorities had any knowledge that there were any such students in the school, and the board of education disclaims any authority to teach students who are not residents of the City of Savannah or the County of Chatham in any of its schools, and the evidence tends to show that the board of education endeavors to enforce the law in this respect.

In conclusion, is the defendant in error within its legal rights in conducting the opportunity and the night schools, although these schools may interfere to some extent with the business college conducted by the plaintiff? It is insisted that the opportunity school and night school are forcing the plaintiff and her college out of business. The record shows that both of these schools have been conducted for many years; and it seems to us that the real trouble in the case is not the opportunity school or the night school, but the general business depression which is and has been upon the country for some time past. Any one who might conduct private schools in the City of Savannah or the County of Chatham might contend with equal reason that the public schools were interfering with the private schools. Undoubtedly if there were no public schools there might be more and larger private schools; but so long as the board of education is acting within its lawful rights, the effect of such schools on private schools can not be considered. So, we reach the conclusion, notwithstanding the very able argument and briefs of the plaintiff, that for no reason assigned is the Board of Education of Savannah and Chatham County acting without the scope of its authority; and therefore the court below did not err in refusing an injunction. *Judgment affirmed. All the Justices concur.*