### 33972. CRIM et al. v. McWHORTER et al.

JORDAN, Justice.

This appeal presents the question of whether a public school system within the State of Georgia can establish a policy requiring the payment of a tuition fee as a precondition for attendance during a summer school session.

Appellants represent the Atlanta Public School System which, as they traditionally have done in the past, operated a limited summer quarter session of high school during the summer of 1978. Appellants received no direct state funding for the operation of its summer school program, but rather relied upon general operating revenue supplemented with funds raised by charging a minimum tuition fee to summer quarter students to defray the expenses of operating a summer school session.

Prior to the initiation of this action, appellants' tuition policy for the summer session of 1977 imposed a charge of ten ($10.00) dollars for each five hours of courses taken by a resident student unless the student obtained a waiver of tuition. Appellants' waiver policy provided that all students receiving Medicaid benefits would automatically receive a waiver of the tuition fee, and that any other students unable to pay the tuition charges could apply to the principal of their school for a waiver, and if the principal found a sufficient case of hardship to have been presented, a waiver of tuition would be granted.

Appellees, two high school students acting through their mothers and on behalf of all others similarly situated, filed this action seeking to declare the tuition policy of the Atlanta Board of Education and the Atlanta Public School System for their 1977 summer school session in violation of constitutional and statutory mandates and seeking to enjoin appellants from charging

any tuition fees for attendance at their summer school session. After a stipulation of facts, the trial court entered an interlocutory injunction enjoining appellants from requiring any student in the Atlanta Public School System who was financially unable to pay the summer session tuition to pay that tuition as a condition for their attendance at summer school.

Following discovery, both appellees and appellants filed motions for summary judgment. On April 4, 1978, the trial court denied appellants' motion and granted appellees' motion for summary judgment in all respects holding that appellants' tuition policy for the summer quarter of 1977 violated Code § 32-937; Art. III, Sec. I, Par. I of the Constitution of Georgia (Code Ann. § 2-4901); and the equal protection clauses of the Constitutions of Georgia (Code Ann. § 2-203) and the United States. The trial court also issued a permanent injunction requiring appellants to refrain from charging any tuition to any student wishing to attend all subsequent summer sessions operated by appellants.

Representatives of the Atlanta Public School System appeal, and we reverse the trial court's decision.

1. Appellees' motion for summary judgment before the trial court argued that appellants' 1977 summer quarter tuition policy violated Art. VIII, Sec. I, Par. I of the Georgia Constitution (Code Ann. § 2-4901) and Code § 32-937 because summer quarter was part of appellants' "common school system," admission to which must be free. Code Ann. § 2-4901 states: "The provision of an adequate education for the citizens shall be a primary obligation of the State of Georgia, the expense of which shall be provided for by taxation." In addition to this constitutional basis for a free system of common schools in Georgia, Code § 32-937 mandates that "admission to all common schools shall be gratuitous to all children between the ages of six and 19 years residing in the districts in which the schools are located."

For a proper construction of the educational opportunities constitutionally guaranteed the citizens of this state, we feel it is necessary to consider the provisions of Code § 32-658a along with Code §§ 2-4901 and 32-937. Code § 32-658a provides that "public and secondary

schools of this state receiving state aid . . . shall be operated so as to provide that each eligible student has access to no less than 180 school days of education."

Appellants' summer school session receives no direct state aid and is operated in addition to the 180 school day requirement mandated by Code § 32-658a. It is clear that under our present statutes, appellants could not be compelled to operate a summer school session since it is neither required nor supported by direct state funding. *Callihan v. Reid,* 149 Ga. 704 (101 SE 914) (1919).

*Callihan,* supra, decided under the Constitution of 1877 which guaranteed only an elementary education, involved a student who wished to continue in the common schools after completing the elementary grades. This court, in interpreting the statutory provision that admission to all common schools be gratuitous, held that gratuitous admission was limited to the prescribed minimum educational requirements. "Neither in the statutes nor the provisions of the Constitution . . . do we find anything rendering it mandatory upon the school authorities of a school district where the money arising from taxes levied for the purpose raises funds only sufficient to conduct and operate the common school, to have and maintain, . . . grades appropriate to a high school." Id., at 707.

Appellees have argued that once a summer session has been put into operation, it becomes part of the common school system of a particular district and must be offered to all students without charge, relying on *Claxton v. Stanford,* 160 Ga. 752 (128 SE 887) (1925) and *Brinson v. Jackson,* 168 Ga. 353 (148 SE 96) (1929). In *Claxton,* the school authorities attempted to charge a matriculation fee in order to finance the operation of their school system for a nine-month term when state law required that schools remain open for only six months each academic year and state public school funds and taxes collected from the school district only financed a six-month term. In rejecting this plan this court held that "a charge for matriculation cannot be imposed as a *condition precedent* to admission to a public school forming a part of such general system. . ." Id., at 753 (2). (Emphasis supplied.) In this present case the payment of a summer session fee is

not a condition precedent for attendance during the statutorily provided nine-month term.

*Brinson v. Jackson,* supra, involved the same school district as in *Claxton* and the identical matriculation plan. *Brinson* held that an Act of the legislature passed subsequent to the *Claxton* decision and relating to the powers of trustees of school districts did not empower them to impose a matriculation fee.

Other jurisdictions which have reviewed this issue in a similar constitutional context have also upheld the payment of summer school tuition fees.

In Granger v. Cascade County School District, 159 Mont. 516 (499 P2d 780) (1972), the Supreme Court of Montana held that summer school tuition fees did not violate a constitutional requirement that the legislature establish and maintain a "general, uniform and thorough system of public, free, common schools." Id., at 524. The Montana court explained that summer school was "both historically and logically not included in the free public school system required by our constitution" and that "(a)ccordingly, reasonable fees and charges may be imposed therefor." Id., at 528.

Likewise, we do not find that summer school sessions are historically or logically included in the free system of common schools mandated by the Constitution and statutes of this state.

2. Appellees' motion for summary judgment also contended that, even if appellants' summer session is found not to be a part of the common school system mandated by Code § 32-937, appellants' summer session tuition policy violates Art. VIII, Sec. I, Par. I of the Georgia Constitution (Code Ann. § 2-4901), because summer session becomes an integral part of appellants' plan to provide an adequate education for the citizens of Atlanta, and Code Ann. § 2-4901 requires that an adequate education be provided for the citizens of Georgia at no expense. Our construction of the "Adequate Program for Education in Georgia Act," Code Chapter 32-6A does not support this conclusion.

Code § 32-644a provides: "The board of education on any local unit of administration may, *in its discretion,* provide for continued operation of one or more public

schools of the local unit for a period of time beyond the normal school year . . . for the purpose of providing summer school education programs. . ." (Emphasis supplied.) If the legislature had intended that summer school be considered part of the "adequate education" guaranteed by the Constitution, the operation of summer quarter sessions would have been mandatory rather than discretionary.

Code § 32-645a (b) (1) provides that the State Board of Education shall certify that a local unit of administration has a year-round operation for one or more grade levels if the operation of the program is for "220 official attendance days or more constituting four quarters." Code § 32-645a (b) (2) provides that "for a student's first 165 or more days constituting three quarters . . . attendance shall be on a tuition free basis." Implicit within the rationale of these provisions is the legislative recognition that a student may be charged tuition for additional educational programs operated beyond the first three quarters of tuition-free school.

3. The final grounds of appellees' motion for summary judgment are that appellants' tuition policy violated the equal protection clauses of both the Constitutions of Georgia and the United States.

Although the right to a free education is guaranteed by the Constitution of the State of Georgia, we have held in Division 1 of this opinion that this right is presently limited to 180 days of tuition-free education. Appellees do not have a constitutional right to attend school for the summer quarter. Therefore, the denial of attendance at summer school to students who do not pay a tuition or students who reside in school districts which choose not to conduct summer school sessions is not a denial of equal protection under the Georgia Constitution.

Appellees also claim that summer school tuition fees discriminate among classes of persons on the basis of wealth and, therefore, violate the equal protection clause of the United States Constitution. The equal protection clause of the Fourteenth Amendment to the United States Constitution does not absolutely deny a state the power to classify groups of persons differently. Equal protection does require that such a classification be rationally

related to the object of the legislation so that all persons similarly situated will be treated alike. Dandridge v. Williams, 397 U. S. 471 (1970). This "rational relationship" test gives way to the more stringent test of strict judicial scrutiny only where a "fundamental right" or "suspect classification" is involved. Mitchell v. Louisiana High School Athletic Assn., 430 F2d 1155 (1970).

In San Antonio Independent School District v. Rodriguez, 411 U. S. 1 (1973), the pre-eminent case involving the interaction between equal protection and public education, the United States Supreme Court held that before a state's laws and the justifications for the classifications they create are subjected to strict judicial scrutiny certain threshold questions must be analyzed. One of these threshold questions was "whether the relative — rather than absolute — nature of the asserted deprivation is of significant consequence." Id., at 19.

In analyzing this question in Rodriguez, the court noted, that in every case involving discrimination based on wealth, had the state provided some "adequate substitute" for the resulting deprivation, there would have been no denial of equal protection. Id., at 20, 21, citing Griffin v. Illinois, 351 U. S. 12 (1956); Britt v. North Carolina, 404 U. S. 226 (1971); Gardner v. California, 393 U. S. 367 (1969); Draper v. Washington, 372 U. S. 487 (1963); Eskridge v. Washington Prison Board, 357 U. S. 214 (1958).

As stipulated by the parties to this action, appellants' summer session tuition policy contains a waiver policy which waives the tuition fee for students who desire to attend summer school, but who are financially unable to pay tuition. This waiver policy provides the "adequate substitute" noted in Rodriguez, and, as a result, appellees do not face an absolute denial of an opportunity to attend appellants' summer school session.

Therefore, the strict scrutiny test is not applicable, and appellants need show only that a rational relationship existed between the classifications created by appellants' tuition policy and the object of this legislation. Under this test appellants' tuition policy certainly does not violate equal protection. The requisite

rational relationship is present in this case because the tuition fee is used to partially defer the cost of an additional educational opportunity which is not supported by direct state funding.

The trial court erred in granting appellees' motion for summary judgment. Because we have rejected each ground of appellees' motion for summary judgment which embraced each allegation in their complaint, this case is remanded with the direction that summary judgment be entered in favor of appellants.

*Judgment reversed with direction. All the Justices concur, except Nichols, C. J., and Hall, J., who dissent.*

ARGUED SEPTEMBER 18, 1978 — DECIDED JANUARY 5, 1979 — REHEARING DENIED JANUARY 23, 1979.

*Smith, Cohen, Ringel, Kohler & Martin, Warren C. Fortson, Bruce H. Beerman,* for appellants.

*Deborah S. Ebel, Robert Connelly,* for appellees.

*Sutherland, Asbill & Brennan, James P. Groton, Thomas A. Cox,* amicus curiae.

NICHOLS, Chief Justice, dissenting.

I cannot agree with the majority's analysis of the free public education constitutional issue or the result reached. Accordingly, I dissent.

The question presented for decision is, "What is 'an adequate education' within the meaning of Article VIII, Section I, Paragraph I of the Constitution of Georgia of 1976, Code Ann. § 2-4901?" If the "summer school program" in question fits within the meaning of the phrase "an adequate education" as used in the free public education clause of our Constitution, then the City of Atlanta Public School System cannot charge the "tuition fees" that lie at the heart of the controversy in the present case.

"A public school system from which resident pupils can be excluded because they are unable or unwilling to pay for admission, is not the system contemplated by the constitution . . . There is no hint in the constitution that these schools are to be open to persons who pay and closed

against those who do not pay... There can be no doubt that municipal public schools, in so far as they perform the functions of common schools, are to be free to the children of the municipality, just as the ordinary common schools are free to the children of the State." *Irvin v. Gregory,* 86 Ga. 605, 613 (13 SE 120) (1890). "The schools forming a part of the common-school system of the State shall, by express provision of the constitution, be free to the children of the State... A charge for matriculation cannot be imposed as a condition of admission, to a public school forming a part of such general system, of a child living in the territory of the school and otherwise qualified." *Wilson v. Stanford,* 133 Ga. 483, 485 (66 SE 258) (1909). See also *Claxton v. Stanford,* 160 Ga. 752 (128 SE 887) (1925); *Moore v. Brinson,* 170 Ga. 680 (154 SE 141) (1930). "By the constitution of this State the common schools... shall be free to all the children of the State... The State system of education provided for in the above provision of the constitution embraces high schools operated by funds whether derived from taxation or otherwise; and no matriculation fee can be charged for children within the school age." *Brinson v. Jackson,* 168 Ga. 353 (1) (148 SE 96) (1929).

The Constitution itself does not answer the question presented. Accordingly, this court must. *Thompson v. Talmadge,* 201 Ga. 867, 872 (41 SE2d 883) (1947). Acts of the General Assembly are instructive in reaching our decision and are entitled to great weight. However, the General Assembly cannot by its enactments deprive the citizens of rights either granted or protected by the Constitution. *Thompson v. Talmadge,* supra.

The majority relies upon the 180-day minimum school year requirement of Code Ann. § 32-658a for its conclusion that the summer school program, which is commenced and conducted after the termination of the 180-day period, is not to be considered a part of "an adequate education" which must be provided free of charge to pupils attending the public elementary and secondary schools. I regard Code Ann. § 32-658a as being instructive but not controlling. Code Ann. § 32-658a (a) provides one of the many factors of the complicated statewide funding laws pursuant to which it is

determined whether, and if so, how much, state funding shall be received by each local board of education to help defray the costs of providing an adequate program of education. Equally indicative of the intention of the General Assembly is the compulsory school attendance law, which states that "The minimum session of annual school attendance required . . . shall be 175 School days, or for the full session or sessions of the school which the child is eligible to attend." Code Ann. § 32-2105. Another indicator of legislative intent is to be found in Code Ann. § 32-645a (b) (2), pertaining to year-round operation of the public schools, wherein it is stated "that for a student's first 165 or more days constituting three quarters or an equivalent plan approved by the State Board of Education, attendance shall be on a tuition free basis . . ." From these varied provisions, this court at least should have determined that the 180-day period of days relied upon by the majority is not the only indicator of legislative intent. Each of these provisions, in its own way, is indicative of what the General Assembly considers to be what might be termed "a complete or regular school year" for the public elementary and secondary schools. However, this approach to analysis of the issues is valid only if one accepts Atlanta's contention that the General Assembly is the sole arbiter of what is "an adequate education" within the meaning of the constitutional provision in question. See *Thompson v. Talmadge,* supra. Were that to be the case, then, presumably, the General Assembly could reduce or increase from year to year the number of days of public elementary and secondary schooling it is willing to support partially with State funds, and our free public education clause thereby would expand and contract in its reach from year to year based alone upon the willingness of the General Assembly to support public education or based alone upon the funds at its disposition from which appropriations of matching state aid could be made. Surely there is more substance to the free public education clause than the majority's analysis would suggest. The majority's construction of the clause entirely ignores the fact that a substantial portion of the public funds expended on public elementary and secondary education are raised at the local level. See Code

Ann. § 32-639a. It further ignores the fact that a substantial portion of the decision-making power regarding education is vested by the Constitution in the local boards of education. See *Bedingfield v. Parkerson,* 212 Ga. 654 (94 SE2d 714) (1956); *Warren v. Davidson,* 218 Ga. 25 (126 SE2d 221) (1962).

In considering these matters, the majority should have been mindful that the issue presented is not whether or not Atlanta must provide any particular quantity or quality of education. Cf., *Callihan v. Reid,* 149 Ga. 704 (101 SE 914) (1919). Neither is the issue one of whether Atlanta is authorized to conduct the "summer school program." Cf., *Worth v. Bd. of Public Ed.,* 177 Ga. 166 (170 SE 77) (1933). Rather, the sole question is whether the Atlanta Board of Education may charge tuition for a particular program it voluntarily has chosen to provide for its pupils who voluntarily have chosen to attend.

The courses in question were taught after the end of the regular school year. They were offered to regular high school students, who received regular high school credits if they "achieved designated course goals." Accordingly, this case is to be distinguished from *Smith v. Crim,* 240 Ga. 390 (240 SE2d 884) (1977), which was concerned with interscholastic sports that were extracurricular in the sense that they were "not essential to the prescribed curriculum which must be made available to all of Georgia's children." 240 Ga. at 391. The courses in question in the present case not only are academic; they also may be counted among a pupil's high school credits if the student attains the requisite level of familiarity with the course materials. These courses thus are to be distinguished from the non-credit "adult education" or "enrichment" courses as to which the amicus parties have expressed serious concerns.

Another point seemingly overlooked by the majority is the fact that if Atlanta may charge a modest "tuition fee" to help defray the costs of the courses in question, then there is absolutely nothing in the laws of Georgia cited to this court or found by me which would preclude Atlanta from charging its "summer school" pupils the entire cost of their summer program, with no public funds of any sort, local or otherwise, being expended in support

of the program. Perhaps the laws are silent in this regard because it never occurred to anyone until now that even a partial charge was permissible.

As I read the majority's opinion, two tests are applied to reach the result that the "tuition fee" charges may be levied against the pupils of Atlanta's "summer school." The majority first notes that the courses of study are offered after what I have termed "the regular school year" has ended. Secondly, the courses are offered, according to the stipulations of the parties, without "direct" state financial aid. The parties, it will be noted, most carefully have avoided contending that there are *no* state tax dollars expended in support of the "summer school program" and have strictly limited their stipulations by the adjective "direct." I, for one, fail to comprehend how it matters under the free public education clause whether the state aid is "direct" or "indirect," whatever those modifiers mean, as long as it is present, a fact which is denied by no one. And, as I have said, even were it to be the case that no state financial aid *at all* is provided for the program in question, I cannot overlook the locally raised public funds that are expended in support of the program. *Brinson v. Jackson,* 168 Ga. 353 (1) (148 SE 96) (1929). The free public elementary and secondary education that is guaranteed by the Constitution is provided by the state through the cooperative efforts of the State Board of Education and the various local boards of education, and by local as well as state public funds. See generally, Code Ann. § 32-601a et seq. The decision of the majority should not have been influenced by the absence of state funding, much less by the absence alone of "direct" state funding. *Brinson v. Jackson,* supra.

The Atlanta Public School System seeks to distinguish the "summer school program" from the educational program conducted during the regular school year on the basis that the summer program is a separate period of instruction beginning after the end of one regular school year and ending before the commencement of the next; and that it is voluntary, rather than compulsory. I believe this is a classical example of a distinction without a difference of substance. According to the stipulations of the parties, most, if not all, of the courses

being taught during the "summer school program" are high school credit courses that are taught during the regular school year. If the courses were not taken voluntarily by these students during the "summer school program," then they (if they are mandatory courses) or other credit courses (if they are electives) would have to be taken during the upcoming regular school term or during some other school term before graduation. The *substance* of the instructional programs thus is the same, and I cannot perceive how this substance somehow is changed by virtue of *when* the pupil takes the course, either mandatorily during the regular school year or voluntarily during "summer school." Suppose that instead of ending the regular session before commencing the "summer school program," Atlanta had chosen merely to extend for a few days the length of the regular program. This would cause the program to be mandatory instead of voluntary. Code Ann. § 32-2105. But the substance of the courses of study would be the same. Can the constitutional command be so easily evaded?

In reaching the conclusion that at least some of the courses contained in the program of education challenged in the present case fall within the ambit of the "adequate education" which must be free to our citizens, I am influenced most by the fact that some (if not all) of the courses are regular high school courses for which regular high school credit is given upon successful completion of required academic goals. These courses merely are being taught at a time of the year when the regular school year has closed, and their costs are not being partially defrayed by "direct" state aid, whatever that is. It matters not at all to me *when* the courses were taken. Nor does it matter that "direct" state aid was not received by Atlanta. The test I would apply is simply stated and is easy to apply. When the Atlanta public schools decided to give high school credit for a course of study, that course became a part of "an adequate education" for which no "tuition fee" may be charged. The reason is that both elementary and secondary education (but not post-secondary education) now are the components of "an adequate education." *State of Ga. v. Regents, University System,* 179 Ga. 210 (175 SE 567) (1934); *Brinson v. Jackson,* 168 Ga. 353 (1), supra.

The majority seeks to distinguish *Claxton v. Stanford,* supra, and *Brinson v. Jackson,* supra, from the present case on the basis that the fees in those cases had to be paid before the student was allowed to enter the regular school term, whereas, in the present case, the pupils were allowed to enter the regular school term without paying fees. Appellees deny that the pupils in *Claxton* or *Brinson* were precluded from attending the regular program if they did not pay for the extra program. Appellants admit that *Claxton* does not indicate that the fee was required to be paid prior to entering the regular program, although they contend this often was the practice in those days. Under these circumstances, I believe the majority has failed to distinguish those two cases on their facts. Accordingly, those cases control the result in the present case, and the majority should have followed them and held that the "tuition fees" in this case cannot constitutionally be collected.

The ruling suggested by this dissent would have no effect on programs of instruction offered to public elementary or secondary school pupils, older children, adults, or the elderly, for which no elementary or high school credit is offered. Programs of education beyond high school credit courses are not within the ambit of the free public education clause. *State of Ga. v. Regents, University System,* supra.

Atlanta and the parties amicus curiae contend that the ruling proposed by this dissent could cause "summer school programs" to be discontinued for lack of funds. This is the mischief Atlanta says it seeks to avoid. An even worse mischief could result from the decision of the majority. The majority's opinion is an open invitation to local boards of education to cease all public financial support for "summer school programs," and to fund these programs entirely from "tuition fees," when there are no "direct" contributions of financial assistance for these programs forthcoming from the state. I fear the discontinuance of these programs due to the loss of *all* public funding far worse than I fear their discontinuance due to the absence of ten-dollar contributions from participating students.

Accordingly, I respectfully dissent.

I am authorized to state that Justice Hall joins in this dissent.