A95A2247. D. B. v. CLARKE COUNTY BOARD OF
EDUCATION.
(469 SE2d 438)

SMITH, Judge.

In this case of first impression in Georgia, we are called upon to decide whether a 12-year-old student may lawfully be expelled permanently from a county's public schools.

The facts are not in dispute. D. B. was found in possession of a knife on school property after a fight in which she stabbed another student. After an administrative disciplinary hearing, D. B. was expelled permanently from all public schools in Clarke County.[1] Be-

---

[1] Under a recently enacted statute, other school systems have the right to refuse to enroll a student who is under a disciplinary order from another school district. OCGA § 20-2-

cause the audiotape of the disciplinary hearing was undecipherable, the Clarke County Board of Education did not review the record of that hearing. Instead, it granted D. B. a de novo evidentiary hearing. After hearing evidence, the board voted unanimously in favor of permanent expulsion. The local board's decision was appealed to the State Board of Education and then to the superior court, both of which affirmed the decision imposing permanent expulsion. We granted D. B.'s application for discretionary appeal to review the propriety of this disciplinary measure.

D. B. does not dispute the fact that she violated both school rules and state law. She contends only that the punishment administered — permanent expulsion — is unlawful and that her right to due process of law was violated because she had no notice before the incident that her conduct might result in permanent expulsion.

1. D. B. contends that permanent expulsion violates her right to a free public education, which is granted by the Georgia Constitution of 1983.

"Education, of course, is not among the rights afforded explicit protection under our Federal Constitution," nor is it implicitly so protected. *San Antonio Independent School Dist. v. Rodriguez,* 411 U. S. 1, 35 (93 SC 1278, 36 LE2d 16) (1973); see *Plyler v. Doe,* 457 U. S. 202, 221 (102 SC 2382, 72 LE2d 786) (1982). Under Art. VIII, Sec. I, Par. I of the Ga. Const. of 1983, however, "[t]he provision of an adequate public education for the citizens [is] a primary obligation of the State of Georgia. Public education for the citizens prior to the college or postsecondary level shall be free and shall be provided for by taxation." The Georgia Supreme Court held in *Crim v. McWhorter,* 242 Ga. 863 (252 SE2d 421) (1979), that "the right to a free education is guaranteed" by this provision of our state constitution. Id. at 867 (3).[2]

The protection afforded by the Georgia Constitution is clearly both broader and more specific than that provided by the federal constitution in this area. The right to a free public education is not unlimited, however, under the Georgia Constitution. Even in those states recognizing an entitlement to education, courts have declared that "[t]his entitlement does not allow the child to escape the consequences of misconduct in a public school, nor does it contradict the inherent authority of a school board to maintain order and discipline

751.2 (b). Therefore, as D. B. correctly notes, she could also be barred from any public school in Georgia.

[2] We reject, however, the arguments of amicus Florence Moise-Stone Center For Law And Education that the Georgia Constitution provides a "fundamental" right to a free public education requiring strict scrutiny under equal protection analysis. The Georgia Supreme Court has held unequivocally that "education per se is not a 'fundamental right.'" *McDaniel v. Thomas,* 248 Ga. 632, 647 (285 SE2d 156) (1981).

in public schools. [Cit.]" *C. L. S. v. Hoover Bd. of Ed.*, 594 S2d 138, 139 (Ala. Civ. App. 1991).

The Georgia Supreme Court recognized in *Crim*, supra, that in this state, the right to a free public education could be, and has been, limited by statute. Therefore, to determine whether the right of students in Georgia to a free public education may be restricted by means of permanent expulsion as a punishment for disciplinary infractions, we must look to the relevant statutes.

In enacting the Public School Disciplinary Tribunal Act, OCGA § 20-2-750 et seq., the Georgia General Assembly recognized that local boards properly may limit students' access to education in response to disciplinary infractions. The Act provides that local boards of education may establish tribunals with authority to impose both suspension and expulsion as disciplinary measures; it sets forth certain procedures that must be followed. OCGA § 20-2-751 defines expulsion as "expulsion of a student from a public school beyond the current school quarter or semester." OCGA § 20-2-751 (1). Contrary to D. B.'s argument, this definition is not ambiguous. OCGA § 20-2-751 clearly sets no time limit for the permissible duration of expulsion. Under the statute, permanent expulsion is therefore authorized.

In addition, the parties set forth cogent but conflicting policy arguments for and against permanent expulsion, and they support their arguments with citation to foreign authorities. The board points out that certain misconduct is of such grave nature that the offending student's presence must be viewed as detrimental to the education of many other students. See *Fortman v. Texarkana School Dist.*, 514 SW2d 720, 722 (Ark. 1974). Conversely, we could agree with D. B. that although it may be authorized, permanent expulsion may be shortsighted public policy: denying children access to education not only creates obstacles to their individual achievement in terms of bettering their own lives, but also greatly diminishes their chances of making a positive contribution to society in general. We note also that in this case, the imposition of permanent expulsion creates an anomalous result. Because D. B. was sentenced to probation in the juvenile court for aggravated assault, the State is not required to provide schooling for her.[3] Had she committed a more serious offense, or had a more stringent sentence been imposed by the juvenile court, committing D. B. to a youth detention center, the State would be compelled by law to provide an education for her. See OCGA §§ 15-11-43; 49-5-3 (12) (C). Because she was sentenced to probation and no Geor-

---

[3] D. B. was charged in the juvenile court with carrying a concealed weapon as well as aggravated assault. The weapons charge was dismissed, however, because the knife did not meet the definition of a weapon in OCGA § 16-11-127.1 (a) (2); its blade was determined to be less than three inches long.

gia statute addresses the responsibility for providing her education, the effect is to deny schooling.

However compelling these concerns may be, they must be addressed in another forum. The Georgia Constitution has delegated the administration and management of local school districts to county and area boards of education. Ga. Const. of 1983, Art. VIII, Sec. V, Par. I. In OCGA § 20-2-754 (c), the legislature has provided that in such matters, the local board "may take *any action* it determines appropriate." (Emphasis supplied.) It has been held consistently that the courts will not interfere with a local board's administration of its schools unless the board's actions are contrary to law or it appears that the board has grossly abused its discretion. *Bedingfield v. Parkerson*, 212 Ga. 654, 660 (4) (94 SE2d 714) (1956); *Colston v. Hutchinson*, 208 Ga. 559, 560 (67 SE2d 763) (1951); *Keever v. Bd. of Ed. of Gwinnett County*, 188 Ga. 299, 300 (1), 302 (3 SE2d 886) (1939). We find neither in this case. Given that the constitutional right to a free public education may be limited by statute and our determination that the applicable statute does not prohibit permanent expulsion, we hold that the board's action was not contrary to law. In so holding, we must reject D. B.'s argument that permanent expulsion conflicts with or violates Georgia's compulsory school attendance statute, OCGA § 20-2-690.1.

Other courts have addressed this argument, and we agree with the reasoning of the Supreme Judicial Court of Massachusetts in *Bd. of Ed. v. School Comm. of Quincy*, 612 NE2d 666 (Mass. 1993). That court found, in rejecting a similar argument, that a compulsory school attendance "statute, read as a whole, addresses only who shall attend school and where. It does not consider curriculum, student performance, discipline, or teacher qualifications. It does not include a specific requirement that a school [board] provide an educational alternative to an individual child who is excluded from the public school for disciplinary reasons. [It] does not indicate a legislative intention that local school committees must make such educational alternatives available." Id. at 670. Our legislature, like that of Massachusetts, has given local school boards the power and authority to oversee the discipline of students. Id. Even when alternatives exist, the board, and not this court, must determine whether those alternatives are appropriate for disciplining a student.

Neither do we find that the board has grossly abused its discretion. "[A] gross abuse of discretion which will authorize resort to the courts must be such as of itself amounts to a violation of the law. [Cit.]" *Bedingfield*, supra, 212 Ga. at 660 (4). Precisely because differing policy considerations exist, even those who disagree with the punishment imposed cannot minimize the severity of the offense committed and the potential danger to other students. Finding, therefore,

that permanent expulsion is neither contrary to law nor an abuse of the board's discretion, we hold that the superior court did not err in affirming the board's imposition of permanent expulsion as a disciplinary measure.

2. D. B. also contends she was denied due process because she had no notice in advance of her action that such action could result in permanent expulsion. She also argues that the board did not have jurisdiction to permanently expel her because permanent expulsion is not permissible under local board policy or state law.

We do not agree. The Clarke County School District Code of Student Conduct, distributed to all students, informed them that carrying weapons to school is prohibited. The Code provides that for weapons infractions, "[t]he principal will recommend to the disciplinary hearing officer that the student be expelled from the Clarke County Schools." In addition, the Code defines expulsion as "losing the privilege of continuing school for the remainder of the grading period, year, *or longer*." (Emphasis supplied.) The Code thus clearly notifies students, including D. B., that expulsions longer than the school year are possible. By failing to limit the length of any expulsion, it permits permanent expulsion.

We have already determined that permanent expulsion is permissible under state law. Contrary to D. B.'s argument, it is also permissible under local board policy. The Clarke County Board of Education Policy Manual provides that "[e]xpulsion shall mean the denial to a student of the right to attend school and take part in any school function for an academic quarter, the remainder of a school year, an entire school year, *or indefinitely*." (Emphasis supplied.) We see no meaningful distinction between permanent expulsion and indefinite expulsion. Consequently, D. B.'s due process rights were not violated.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

Decided February 23, 1996 — 

*Patricia D. Barron, Wendy J. Glasbrenner, Christina Petrig, Hannibal F. Heredia, Homero Leon*, for appellant.

*Terrell W. Benton, Jr.*, for appellee.