## A01A0730. KRISTIN NATIONAL, INC. v. BOARD OF EDUCATION OF THE CITY OF MARIETTA et al.
### (552 SE2d 475)

RUFFIN, Judge.

Kristin National, Inc. d/b/a Taggart's Driving School ("Taggart's") is a driver education school which, for a fee of $379, teaches students to drive. The Marietta City School District and the Cobb County School District (collectively the "school systems") offer their own, extracurricular driver education program for a fee of $195. Taggart's sued the school systems,[1] seeking an injunction and asking the court to declare that their driver education program violates Georgia law. The trial court granted the school systems' motion for summary judgment, and Taggart's appeals. For reasons that follow, we affirm.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

---

[1] In its complaint, Taggart's designated the Marietta City School District as the Board of Education of the City of Marietta and also sued Ronald Galloway in his capacity as Superintendent of Marietta City Schools.

[2] OCGA § 9-11-56 (c).

On appeal, we review a trial court's grant of summary judgment de novo.[3]

The relevant facts in this case are undisputed. The school systems conduct their driver education program through the Marietta City School District's Community School Program ("CSP"). The CSP offers extracurricular classes for a fee on a variety of subjects, including cooking, computers, and driver education. The driver education course is offered to all high school students after regular school hours and on weekends. Because it is not a required subject of the school systems' regular curriculum, enrolled students receive no credit for the course. The school systems receive no state or federal funding for the course, relying instead on the $195 fee charged to each student taking the class.

The school systems are able to offer their driver education course to students at a substantially lower price than Taggart's because the CSP does not pay any taxes on goods, such as cars, and services, such as maintenance, that it purchases for the driver education course. In addition, the school systems' driver education course has the option of buying gas for class vehicles from the school systems' bus facility for $1 per gallon or in the retail market if the price there is less. Furthermore, the CSP pays the school systems only $20,000 per year to help offset the cost of administering its program. The money generated from student fees for the driver education course is used to pay the $20,000 fee and for course expenses such as salaries, new cars, vehicle maintenance, automobile insurance, and classroom materials. Each year the CSP, as a whole, generates excess revenues of approximately $200,000, which it remits to the school systems to pay for things such as field trips, materials, and equipment.

Taggart's alleges that the school systems' driver education program is unlawful for several reasons. Taggart's asserts that the school systems' operation of the program is an ultra vires act, that it violates Georgia's Quality Basic Education Act ("QBE Act" or "Act"),[4] that it constitutes unfair competition, and that it is unconstitutional. In granting summary judgment to the school systems, the trial court concluded that, having satisfied the QBE Act by offering students 180 days of tuition-free education, the school systems, "acting well within their authority to expand and enrich their curricula, . . . may charge a fee for Driver Education when offered as part of [the CSP]." We agree with the trial court.

1. Taggart's asserts that the school systems' operation of the driver education course is an ultra vires act "because no express statutory authority permits such acts." Although Taggart's does not dis-

---

[3] See *Moore v. ECI Mgmt.*, 246 Ga. App. 601 (542 SE2d 115) (2000).
[4] See OCGA § 20-2-130 et seq.

pute the school systems are permitted to teach driver education, it contends that they have no authority to offer the class after regular school hours for a fee.

As a general rule,

> in the absence of express legislative sanction, [municipalities have] no authority to engage in any independent business enterprise or occupation such as is usually pursued by private individuals. In other words, its legitimate duty is to deal with public affairs, and not those which are *purely private and entirely unconnected with a proper administration of its governmental duties.*[5]

Teaching children, however, is *not* a matter which is purely private and entirely unconnected with the school systems' proper administration of its duties. The Georgia Constitution clearly imposes this duty on the government. Article VIII, Section I, Paragraph I of the Georgia Constitution of 1983 requires that "[t]he provision of an adequate public education for the citizens shall be a primary obligation of the State of Georgia." To meet this obligation, the Constitution grants local school boards the power "to establish and maintain public schools within their limits" and charges the boards with the "management and control" of the schools.[6] Our Supreme Court has characterized these constitutional provisions as a

> complete constitutional vesting of authority to manage and control county schools in the county board of education. It harmonizes perfectly with repeated and consistent rulings of this court. Any challenge of acts of the county board relating to control and operation of schools must be weighed in the light of this sweeping power, which clearly manifests an intent to entrust the schools to the boards of education rather than the courts. Unless the act of a board violates some law, or is such a gross abuse of discretion as amounts to a violation of law, courts should not and can not interfere.[7]

We fail to see how the school systems are violating any laws or abusing their discretion by offering the driver education course after

---

[5] (Emphasis supplied.) *Keen v. Mayor &c. of Waycross,* 101 Ga. 588, 590 (29 SE 42) (1897). See also *Tift County Hosp. Auth. v. MRS of Tifton, Ga., Inc.,* 255 Ga. 164 (335 SE2d 546) (1985); *Atlanta Metro Associated Plumbing Contractors v. Maloof,* 259 Ga. 777 (386 SE2d 338) (1990).

[6] Ga. Const. of 1983, Art. VIII, Sec. V, Pars. I, II.

[7] *Bedingfield v. Parkerson,* 212 Ga. 654, 656 (1) (94 SE2d 714) (1956).

hours and for a fee.

Our General Assembly, in promulgating the QBE Act, recognized the need to prepare Georgia's youth to be productive citizens.[8] Thus, the QBE Act requires public schools receiving state funding to provide students with "180 school days of education each fiscal year."[9] During these required school days, schools are compelled to teach students a core curriculum established by the State Board of Education,[10] and because this basic education is funded by the state, "a local school system shall not charge resident students tuition or fees . . . as a condition of enrollment or full participation in any instructional program."[11]

But the QBE Act does not restrict schools to solely teaching core classes, tuition-free, during the regular school year. Indeed, the QBE Act specifically empowers local school boards to "expand and enrich [the core] curriculum to the extent it deems necessary and appropriate for its students and communities."[12] Such classes are designated as "enrichment courses,"[13] and local school boards are "responsible for ensuring that [they] are properly planned, implemented, monitored, and evaluated to ensure the highest quality possible."[14] We believe that these statutes should be read to maximize the educational opportunities provided by the Act.

Likewise, the QBE Act authorizes local school boards to offer nontraditional educational programs. The Act characterizes these programs as "other educational programs not ordinarily coming within the prescribed curricula of the public schools," and, if the state is not already offering the course, authorizes local boards to "implement such programs locally in accordance with criteria and standards prescribed by the state board."[15]

Most importantly, the QBE Act expressly encourages local boards to provide educational opportunities beyond the core curriculum offered during the required 180 school days even if they must charge tuition for the classes. Specifically, the QBE Act requires local boards to provide a " 'Summer Opportunity Program,' to extend educational opportunities beyond the normal school year."[16] Although the

---

[8] See generally OCGA § 20-2-131 (stating objectives and purposes of the Act).
[9] OCGA § 20-2-168 (c) (1).
[10] See OCGA § 20-2-140.
[11] OCGA § 20-2-133 (a).
[12] OCGA § 20-2-140.
[13] See OCGA § 20-2-160 (defining "enrichment course" as "a course which does not dedicate a major portion of the class time toward the development and enhancement of one or more student competencies as adopted by the state board under Code Section 20-2-140").
[14] OCGA § 20-2-242 (2).
[15] OCGA § 20-2-300.
[16] OCGA § 20-2-168 (f).

Summer Opportunity Program is required to be offered, tuition-free, to students from kindergarten through eighth grade who have been held back or failed academic subjects,[17] the legislature expressly decreed that "[l]ocal boards are encouraged to expand the Summer Opportunity Program through the use of local funds, *tuition*, grants, scholarships, Chapter I, and all other available funds to provide summer educational opportunities for all other students in the school system."[18] Such decree is consistent with "the policy of this state that every effort be made to utilize currently available educational facilities and equipment on a year-round basis."[19]

It is true that, under the State Board of Education Rules, a local school board *may* offer driver education as an elective course, for credit, during the school day.[20] It also appears that driver education courses are eligible for state funding if the course is offered as part of the school's curriculum during the school day.[21] However, we are aware of no authority, and Taggart's has cited none, which requires that this is the exclusive manner in which a local school board may offer driver education.[22]

Rather, given that the school systems in this case receive no state funding[23] and that the QBE Act specifically provides for tuition-based extracurricular courses, it does not appear that the legislature intended to prohibit local school boards from offering a driver education course to students for a fee after regular school hours.[24] And, in light of the tremendous benefit a driver education course provides to students and the community, we can discern no reason why the legislature would have intended to prohibit a board from offering the class during the school year after regular school hours when it could

---

[17] See id.

[18] (Emphasis supplied.) Id.

[19] OCGA § 20-2-168 (e) (1).

[20] See State Board of Education Rules 160-4-2-.03; 160-4-2-.46.

[21] See OCGA § 20-2-160 (a), (b) (providing that student enrollment in a driver education course offered during the school day is a part of the calculation used to determine the amount of state funds appropriated to the local school system); see also OCGA § 20-2-257 (Supp. 2000) (providing that driver education programs are eligible for grants from the State Board of Education).

[22] Cf. OCGA § 20-2-168 (f) (encouraging school boards to charge tuition for educational opportunities offered during summer); *Crim v. McWhorter*, 242 Ga. 863 (1) (252 SE2d 421) (1979) (holding that summer school courses are not included in the free system of education under Georgia law and that school boards may therefore charge tuition for classes offered during the summer).

[23] Although it is clear that the school systems benefit from their tax free status and the use of school facilities, Taggart's has not argued that such benefits constitute funding for the course.

[24] We offer no opinion as to whether a local school board may charge tuition for a driver education class offered during the school day. See 85-35 Op. Atty. Gen. 81 (1985).

offer the same class during the summer under the Summer Opportunity Program.[25]

Thus, considering the authority provided to local school boards under the Act, in conjunction with the sweeping authority granted to boards under the Constitution, we do not believe that offering such a program violates any laws or constitutes a gross abuse of discretion.[26] Accordingly, we conclude that the school systems' operation of the course is not an ultra vires act, that the course does not violate the QBE Act, and that the trial court did not err in granting summary judgment to the defendants on this ground.

2. Taggart's also asserts that because the school systems' operation of the course is an ultra vires act, it constitutes unfair government competition. Inasmuch as we concluded in Division 1 that offering the course is not an ultra vires act, this assertion is without merit.

3. Taggart's asserts that the school systems' driver education course is unconstitutional because students must pay a course fee. The assertion is based on Article VIII, Section I, Paragraph I of the Georgia Constitution of 1983, which provides that "[p]ublic education for the citizens prior to the college or postsecondary level shall be free and shall be provided for by taxation." The free education guaranteed here, however, is "limited to the prescribed minimum educational requirements."[27] And, because the fee charged for the driver education course is "not a condition precedent for attendance during the statutorily provided nine-month term," it is not unconstitutional.[28] The constitutional guarantee of a free education "has no application to supplementary instruction offered by the school [systems] on a private basis during the summer recess or at special times. [Such classes] are both historically and logically not included in the free public school system required by our Constitution."[29] Accordingly, we do not find that the school systems are violating the Georgia Constitution by charging a fee for a driver education course which is not a part of the state's required curriculum.[30]

*Judgment affirmed. Johnson, P. J., concurs. Ellington, J., concurs in the judgment only.*

---

[25] See generally OCGA § 1-3-1 (a) (stating that "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly").

[26] See *Bedingfield,* supra.

[27] *Crim*, supra at 865 (1).

[28] Id. at 866 (1).

[29] *Granger v. Cascade County School Dist.*, 159 Mont. 516, 528 (499 P2d 780, 786) (1972) (quoted with approval in *Crim*, supra at 866).

[30] See *Crim*, supra.

494

Decided July 9, 2001 — 

Wilson, Morton & Downs, Robert E. Wilson, Debra A. Golymbieski, for appellant.

Brock, Clay, Calhoun, Wilson & Rogers, Danny G. Brock, C. Latain Kell, John K. Wells, David J. Larson, Caryl S. Black, for appellees.