NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231190-U

NO. 4-23-1190

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 23, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| ANTHONY RICHARDS, | ) | No. 21CM1815 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Tamika R. Walker, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1  *Held*: When all the evidence is viewed in a light most favorable to the prosecution, a rational trier of fact could find, beyond a reasonable doubt, that the owner of the housing development had authorized a police officer to order defendant to leave the housing development, rendering defendant criminally liable for trespass when he failed to promptly comply with that order.

¶ 2  A Winnebago County jury found defendant, Anthony Richards, guilty of criminal trespass to real property. See 720 ILCS 5/21-3(a)(3) (West 2020). The circuit court sentenced him to 18 months of conditional discharge and 12 days in jail.

¶ 3  Defendant appeals, challenging the sufficiency of the evidence. Specifically, he argues that the evidence was insufficient to prove, beyond a reasonable doubt, that the police officer who ordered him to leave the property "had the authority as 'owner or occupant' to ban [him] from the property." See *id.*

¶ 4 We disagree with that argument. When we view all the evidence in a light most favorable to the prosecution, as we are required to do, we conclude that a rational trier of fact could find, beyond a reasonable doubt, that the police officer had authority from the property owner to order defendant to leave the property. Therefore, we affirm the circuit court's judgment.

¶ 5                                        I. BACKGROUND

¶ 6 Ryan Fleming testified that he was a police officer with the Rockford Police Department, and that, from 2017 to 2022, he was assigned to the Rockford Housing Authority Unit. His responsibilities in that assignment were to "patrol all assigned Rockford Housing Authority properties" and "respond to calls there."

¶ 7 On September 9, 2021, at about 3:30 p.m., Fleming and his partner, Joshua Arthur, were on Buckbee Street, which was adjacent to Blackhawk Courts (Blackhawk), a housing development owned by Rockford Housing Authority. They had police uniforms on and were bicycling to Blackhawk when they saw defendant throw a beer can onto the ground. Because they "were directly in front of a daycare which [was] attached to the housing development," they asked defendant to pick the can up. Defendant became somewhat aggressive: he picked up the can and threw it in the direction of Arthur. Fleming and Arthur continued on their way.

¶ 8 The two police officers rode into Blackhawk, which extended between 15th Avenue and Buckbee Street of Rockford. At "almost every entrance" to Blackhawk, there were signs listing the rules for housing residents and announcing that Blackhawk was private property. Similar signs were on the residential buildings.

¶ 9    Defendant followed Fleming and Arthur into Blackhawk, continuing to scream at them and challenging them to a fistfight. Residents of Blackhawk began coming outside to see what the commotion was all about. At 1500 Sun Court, which was part of Blackhawk, Fleming told defendant "he was now banned from the property and he needed to leave." Defendant refused to leave and "repeatedly" told Fleming he "did not have the authority to ban him."

¶ 10    Defense counsel asked Fleming:

"Q. Did you ever explain to him what authority you had?

A. I tried but I don't think he was listening.

Q. Do you remember what you said?

A. I mean, I pretty much had it down to a science of—back then what I would explain, that I'm essentially an agent of the Rockford Housing Authority, I'm employed through the City of Rockford Police Department, but also at that point the Rockford Housing Authority paid the officers[ ] assigned to the housing authority [their] salaries so, therefore, that gave us the right to ban people from those properties and enforce the rules and regulations of the housing authority which covered—there were tons of rules and regulations."

Because defendant did not leave when Fleming ordered him to leave, Fleming told him he was under arrest. Only then did defendant begin walking away. Fleming yelled at defendant to stop. He walked up behind defendant, took hold of him, and put the handcuffs on him.

¶ 11    The State called Arthur, too, who gave essentially the same account as Fleming. Arthur was asked approximately how much time passed between the moment when Fleming told defendant he was banned from Blackhawk and the moment when Fleming arrested defendant. Arthur answered, "We probably were on Sun Court for 15 minutes."

II. ANALYSIS

¶ 13        The statute that defendant was charged with violating provides as follows:

> "(a) A person commits criminal trespass to real property when he or she:
>
> \*\*\*
>
> (3) remains upon the land of another, after receiving notice from
> the owner or occupant to depart[.]" *Id.*

According to defendant, "[t]he evidence at trial was insufficient to prove beyond a reasonable doubt that the 'owner or occupant' of the area outside the property located at 1500 Sun Court," namely, Rockford Housing Authority, "told [defendant] to depart." Defendant cites *People v. Hsiu Yan Chai*, 2014 IL App (2d) 121234, as authority for that argument.

¶ 14        *Chai* is distinguishable, however, because in that case, there was no evidence that the police officer's permanent ban of the alleged trespasser had been explicitly or implicitly authorized by the owner or occupant of the property. See *id.* ¶ 35. The police officer in *Chai* ordered the defendant to leave the Illinois Department of Motor Vehicles (DMV) *and* not to come back. *Id.* ¶ 10. Because the defendant had been yelling and cursing, prompting the DMV personnel to call the police, the police officer's order that the defendant leave the premises was, by reasonable inference, within the contemplation of the DMV personnel—but the police officer's further order that the defendant *not return* to the DMV went too far. See *id.* ¶ 39. The appellate court reasoned:

> "[I]n the instant case, [the] owner or occupant's summoning police to remove a
> troublesome patron did not imply a request to tell that patron that he was never to
> return. Rather, given that the property at issue is a public facility and that [the]
> defendant] had committed the relatively minor 'offense' of losing his temper, it is

not natural or reasonable to infer that the owner or occupant, by enlisting the help of the police, instructed the police to tell [the defendant] that he was forever banned from the facility. We cannot allow the jury to have made such an inference absent any evidence." *Id.* ¶ 38.

As the appellate court explained, the State had to prove "a link between an owner or occupant of the DMV and the police." *Id.* ¶ 35. Because the State had charged the defendant in *Chai* with " 'enter[ing] upon the land of another, after receiving, prior to such entry, notice from the owner or occupant that such entry [was] forbidden' " (emphasis omitted) (*Chai*, 2014 IL App (2d) 121234, ¶ 34 (quoting 720 ILCS 5/21-3(a)(2) (West 2010)), the "link" that the State had to establish—and which was missing from the record—was "that an owner or occupant authorized or requested the police to provide [the defendant] with notice that he was never to return." *Id.* ¶ 35.

¶ 15    In the present case, defendant was charged with violating a different subsection of section 21-3(a): the subsection criminalizing "remain[ing] upon the land of another, after receiving notice from the owner or occupant to depart" (720 ILCS 5/21-3(a)(3) (West 2020)). The question for us, then, is this. When all the evidence is viewed in a light most favorable to the prosecution, could a rational trier of fact find, beyond a reasonable doubt, that Fleming had authority from Rockford Housing Authority to order defendant to leave Blackhawk? See *Chai*, 2014 IL App (2d) 121234, ¶ 33.

¶ 16    The answer is yes. According to the explanation that Fleming gave defendant at 1500 Sun Court, Fleming was "essentially an agent of the Rockford Housing Authority." See *People v. Thompson*, 56 Ill. App. 3d 557, 565 (1978) ("We find that the evidence was sufficient in law to show that the defendants refused to leave after being requested to do so by an

- 5 -

authorized agent of the school district."). The security of Blackhawk was within the scope of Fleming's agency. Fleming was analogous to a housing development security guard. He was impliedly authorized by Rockford Housing Authority to tell loud and combative nonresidents to leave. Presumably, this was just the sort of security-related task that Rockford Housing Authority paid the Rockford Police Department to have Fleming and Arthur perform. The link that was missing in *Chai* was established in this case.

¶ 17                                  III. CONCLUSION

¶ 18            For the foregoing reasons, we affirm the circuit court's judgment.

¶ 19            Affirmed.